# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

    Respondent,

v.

DAVID V. CHESNOKOV,

    Appellant.

)
)
)
)
)
)
)
)
)
)
)

No. 67924-4-I

DIVISION ONE

PUBLISHED OPINION

FILED: July 8, 2013

APPELWICK, J. — Chesnokov was convicted of first degree robbery and three counts of second degree assault. The robbery "to convict" instruction listed the victim as Venneti or Dickey, one assault instruction listed Venneti as the victim, and one assault instruction listed Dickey as the victim. Chesnokov argues that his assaults against Venneti and Dickey both merge into his robbery conviction, because the conduct constituting the assaults was necessary to elevate robbery to the first degree. The State argues neither assault conviction should merge with the robbery conviction. We hold that the merger doctrine applies, but only one assault conviction was necessary to elevate robbery to the first degree. We vacate only one assault conviction and remand for resentencing.

## FACTS

On the evening of February 20, 2011, David Chesnokov and Mark Shtefanio went into an AT&T store in Mount Vernon. A surveillance video shows that they wandered around the store for about 20 minutes looking at various phone and tablet displays.

The next morning, Morgan Venneti and Lupe Dickey were working at the front counter when Chesnokov and Shtefanio reentered the store. This time, Chesnokov and

Shtefanio were wearing bandanas over the lower portion of their faces and Chesnokov was holding what about appeared to be a gun. Unknown to Venneti and Dickey at the time, the gun was actually a BB gun. Chesnokov pointed the gun at Venneti's head and told her and Dickey to get on the ground. Shtefanio began grabbing phones.

Melissa Suarez was working in the store's back room. After hearing loud voices from the sales floor, she walked out and saw Chesnokov pointing a gun at Venneti and Dickey. When Chesnokov saw Suarez, he ran toward her, told her to get on the floor, and pointed the gun at her head. Chesnokov and Shtefanio left the store with two phones and a tablet.

Police officers executed search and arrest warrants on Chesnokov and Shtefanio. Police discovered the stolen tablet, clothes and bandanas that Chesnokov and Shtefanio wore during the robbery, and a BB gun that looked like the one used in the robbery.

The State charged Chesnokov with robbery in the first degree and three counts of assault in the second degree. The three assault charges were based on his assault of Suarez, Venneti, and Dickey. It also charged him with tampering with a witness, based on a phone call from jail in which he told Shtefanio's girlfriend to "[t]ell them we didn't show you anything."

After Chesnokov was convicted on all charges, he argued that the assault charges should merge into the robbery conviction. The State argued that the assault against Suarez did not merge because she was not named as a victim of the robbery, and that the assaults against Venneti and Dickey did not merge because the assaults

were not necessary to elevate the robbery to first degree. The trial court agreed with the State and concluded that none of the assault charges merged.

DISCUSSION

The State may bring multiple charges arising from the same criminal conduct in a single proceeding. State v. Michielli, 132 Wn.2d 229, 238-39, 937 P.2d 587 (1997). However, state and federal constitutional protections against double jeopardy prohibit multiple punishments for the same offense. State v. Kier, 164 Wn.2d 798, 803, 194 P.3d 212 (2008). Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense. State v. Freeman, 153 Wn.2d 765, 771, 108 P.3d 753 (2005). The court engages in a three-part test to determine whether the legislature intended multiple punishments in a particular situation. Kier, 164 Wn.2d at 804. First, the court searches the criminal statutes involved for any express or implicit legislative intent. State v. Calle, 125 Wn.2d 769, 776, 888 P.2d 155 (1995). Second, if the legislative intent is unclear, the court turns to the "same evidence" Blockburger test, which asks if the crimes are the same in law and in fact. Id. at 777-78 (citing Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 2d 306 (1932)). Third, the merger doctrine may be an aid in determining legislative intent. Freeman, 153 Wn.2d at 772-73. Even if two convictions would appear to merge on an abstract level under this analysis, they may be punished separately if the defendant's particular conduct demonstrates an independent purpose or effect of each. Kier, 164 Wn.2d at 804. The usual remedy for violations of the prohibition of double jeopardy is to vacate the lesser offense. State v. Hughes, 166

3

Wn.2d 675, 686 n.13, 212 P.3d 558 (2009). The court's review is de novo. Freeman, 153 Wn.2d at 770.

I.   Merger Doctrine

Chesnokov argues that two of his assault convictions, against Venneti and Dickey, merge into his first degree robbery conviction. Under the merger doctrine, when the degree of one offense is raised by conduct separately criminalized by the legislature, the court presumes the legislature intended to punish both offenses through a greater sentence for the greater crime. Freeman, 153 Wn.2d at 772-73. For instance, the doctrine applies when, to prove first degree rape, the State must prove not only that a defendant committed rape, but also that the rape was accompanied by an act defined as a crime elsewhere in the criminal statutes, such as assault or kidnapping. Id. at 777-78 (quoting State v. Vladovic, 99 Wn.2d 413, 420-21, 662 P.2d 853 (1983)).

There is no per se rule that assault in the second degree merges into robbery in the first degree. Id. at 774. Rather, a case by case approach is required. Id. But, the Supreme Court has repeatedly determined that second degree assault merges into first degree robbery when there is no independent purpose for each crime.

Freeman involved the consolidated cases of State v. Freeman and State v. Zumwalt. Id. at 765. Freeman and his accomplices were supposed to be driving an acquaintance to a party. Id. at 769. Instead, they stopped on a dark, dead-end street. Id. Freeman got out of the vehicle, walked around to the acquaintance's car door, ordered him to hand over valuables, and shot him when he did not immediately comply. Id. Freeman and his accomplices then robbed the acquaintance and left him. Id. A jury convicted Freeman of first degree assault and first degree robbery. Id. The trial court

determined that the two convictions were not the same for double jeopardy purposes. Id.

Zumwalt offered to sell drugs to a woman he met at a casino. Id. at 770. When they met in the parking lot to conclude the transaction, Zumwalt decided not to sell her drugs. Id. Instead, he punched her hard enough to knock her to the ground and fracture her eye socket. Id. He then robbed her of approximately $300 in cash and casino chips. Id. He was convicted of second degree assault and first degree robbery. Id. The trial court determined that the two convictions were not the same for double jeopardy purposes. Id.

Going through the three-part test, the Supreme Court first noted that the standard sentence for first degree assault is substantially longer than the penalty for first degree robbery. Id. at 775-76. It concluded that vacating Freeman's first degree assault charge would have produced a windfall and could not have been what the legislature intended. Id. at 776. Rather, the disparate sentences were evidence that the legislature intended to punish first degree assault and first degree robbery separately. Id. As to Zumwalt, it found no evidence in the statutes themselves that the legislature intended to punish second degree assault and first degree robbery separately. Id. The supreme court did not apply the Blockburger test because the parties seemed to agree that the crimes were not the same at law. Id. at 777.

The court then turned to the merger doctrine. It explained that, "to prove first degree robbery as charged and proved by the State, the State had to prove the defendants committed an assault in furtherance of the robbery." Id. at 778. "[W]ithout the conduct amounting to assault, each would be guilty of only second degree robbery."

5

Id. It determined that, "[u]nder the merger rule, assault committed in furtherance of a robbery merges with robbery" unless an exception applies or there is other evidence of contrary legislative intent. Id. Thus, Zumwalt's second degree assault conviction merged into his first degree robbery conviction, but Freeman's first degree assault conviction did not merge with his first degree robbery conviction, because there was other evidence of contrary legislative intent. Id. The court stated that generally first degree robbery and second degree assault "will merge unless they have an independent purpose or effect." Id. at 780.

In Kier, Qualgine Hudson was driving home and his cousin, Carlos Ellison, was in the passenger seat. 164 Wn.2d at 802. Three men in another car honked their horn at Hudson. Id. He pulled over, got out of the car, and began talking to one of the men. Id. Kier got out of the other car and pointed a gun at Hudson. Id. Hudson ran away. Id. Kier then approached Ellison, who was still in Hudson's car, and pointed the gun at him. Id. He ordered Ellison to get out of the car. Id. After Ellison got out, Kier and his two accomplices drove away with both cars. Id. at 803. A jury found Kier guilty of second degree assault and first degree robbery. Id.

Kier was convicted of first degree robbery under RCW 9A.56.200(1)(a)(i-ii), which provides that robbery is elevated to the first degree if the defendant is armed with a deadly weapon or displays what appears to be a firearm or other deadly weapon in the commission of the robbery or in immediate flight from the robbery. Id. at 805. Robbery itself requires the taking of property by the use or threatened use of immediate force, violence, or fear of injury to a person or his property. Id. at 805-06. The robbery to convict instruction required the State to prove that, in addition to using fear or force, Kier

6

"'was armed with a deadly weapon or displayed what appeared to be a deadly weapon.'" Id. at 808-09. Kier was convicted of second degree assault under RCW 9A.36.021(1)(c), which provides that a person is guilty of second degree assault if he "assaults another with a deadly weapon." Id. at 806. Assault involves putting another in apprehension or fear of harm, regardless of whether the actor intends to inflict or is incapable of inflicting such harm. Id. The to convict instruction required the State to prove that Kier assaulted Ellison "'with a deadly weapon.'" Id. at 809. The trial court denied Kier's motion to vacate his second degree assault conviction. Id. at 803.

The Supreme Court concluded that "the completed assault was necessary to elevate the completed robbery to first degree." Id. at 807. It explained, "The merger doctrine is triggered when second degree assault with a deadly weapon elevates robbery to the first degree because being armed with or displaying a firearm or deadly weapon to take property through force or fear is essential to the elevation." Id. at 806.

In this case, Chesnokov was charged with first degree robbery pursuant to RCW 9A.56.200(1)(a). Specifically, the trial court instructed the jury that to convict, it needed to find that in the commission of robbery or in the immediate flight therefrom, Chesnokov or an accomplice "display[ed] what appear[ed] to be a firearm." It instructed the jury that, to convict Chesnokov of assault in the second degree, it needed to find that he assaulted "another with a deadly weapon."

The State argues that Chesnokov's convictions do not merge, because the jury could have concluded that Chesnokov displayed what appeared to be a firearm, the BB gun, but that the BB gun was not a deadly weapon. In that scenario, the jury could have convicted for first degree robbery but not for second degree assault. Essentially, the

7

State argues that proving second degree assault was sufficient, but not necessary, to elevate the robbery conviction to the first degree.

The only reference to weapons in the definition of second degree assault is "[a]ssaults another with a deadly weapon." RCW 9A.36.021(1)(c). In contrast, robbery can be elevated to the first degree when the defendant "[i]s armed with a deadly weapon" or "[d]isplays what appears to be a firearm or other deadly weapon." RCW 9A.56.200. The State argues that, by charging under the more lenient "[d]isplays what appears to be a firearm or other deadly weapon," it avoids double jeopardy concerns. (Quoting RCW 9A.56.200.)

We reject the State's argument. First, although the State frames its argument in terms of "merger" and "elevation," it is really applying the Blockburger test. Under that test, crimes may not be punished separately "if the crimes, as charged and proved, are the same in law and in fact." Freeman, 153 Wn.2d at 777 (citing Blockburger, 284 U.S. at 304). "[T]he mere fact that the same conduct is used to prove each crime is not dispositive." Freeman, 153 Wn.2d at 777. The State makes that precise argument here, contending that it is not dispositive that the same conduct was used to prove first degree robbery and second degree assault, because the second degree assault charge required an additional finding that the BB gun was a deadly weapon. But, Chesnokov does not rely on the Blockburger test. The merger doctrine is a different consideration. Indeed, in Freeman the appellants agreed that the crimes were not the same at law and the court nevertheless reached the conclusion that Zumwalt's second degree assault conviction merged with his first degree robbery conviction. Id. at 777-78.

8

Second, although the State is correct that the merger doctrine applies to a case as charged, the prosecutor's charging decisions and careful statutory parsing do not override the legislative intent to treat these crimes as the same. Chesnokov was charged with crimes that required the State to prove that he was armed with a deadly weapon or displayed what appeared to be a firearm or other deadly weapon. The conduct and evidence used to establish those elements in the robbery and assault charges was the same: Chesnokov brandished a BB gun that looked like a real gun and pointed it at the victims. It was not disputed that the BB gun looked like a real gun, and it was not disputed that the BB gun was in fact a deadly weapon.

Third, the State attempts to distinguish this case from Kier where there is no meaningful distinction to be made. In Kier, the second degree assault instruction required the jury to find that the assault involved a deadly weapon, but the first degree robbery instruction only required the jury to find "'the defendant was armed with a deadly weapon or displayed what appeared to be a deadly weapon.'" 164 Wn.2d at 809 (emphasis added). Just as in this case, the jury could have hypothetically determined that the defendant "displayed what appeared to be a deadly weapon," but was not actually armed with a deadly weapon.

Kier is directly on point. The Kier court stated, "The merger doctrine is triggered when second degree assault with a deadly weapon elevates robbery to the first degree, because being armed with or displaying a firearm or deadly weapon to take property through force or fear is essential to the elevation." Id. at 806. Although we recognize that there is no per se rule that second degree assault merges with first degree robbery, the State has not identified any unique characteristic of this case that warrants reaching

9

a different result.

II.    Remedy

Chesnokov argues that, because the merger doctrine applies, we must vacate both his assault committed against Venneti and his assault committed against Dickey. We disagree.

The merger doctrine applies at the time of sentencing and its purpose is to correct violations of the prohibition of double jeopardy. See, e.g., State v. Parmelee, 108 Wn. App. 702, 711, 32 P.3d 1029 (2001). As such, it is a doctrine aimed at providing remedies. The touchstone of determining the appropriate remedy is legislative intent. Freeman, 153 Wn.2d at 771-72.

The jury found Chesnokov guilty of assaulting both Venneti and Dickey, but only one of those convictions was essential to elevate robbery to the first degree. It does not violate the merger doctrine for Chesnokov to be punished for the remaining assault count where the State has proven two counts and one of those counts merges with the robbery conviction. The second conviction was not essential and does not merge. A contrary interpretation would produce an absurd result: a defendant convicted of 100 counts of second degree assault and one count of first degree robbery encompassing 100 potential victims would receive the same punishment as a defendant who committed first degree robbery and second degree assault against one victim.

At oral argument, appellate counsel argued that both convictions must merge pursuant to Kier. In Kier, the to convict instruction for second degree assault specified Ellison as the victim, but the to convict instruction for first degree robbery did not specify a victim. 164 Wn.2d at 812. The jury could have determined that the robbery

instruction applied to Ellison, Hudson, or both. Id. The State argued that the assault against Ellison did not merge, because it specified in closing that Hudson was the victim of the robbery. Id. at 813. The Supreme Court concluded that it was unclear whether the jury found that Ellison was a victim of the robbery as well as the assault, which created an ambiguity. Id. at 811-12. Under the rule of lenity, ambiguous jury verdicts must be resolved in the defendant's favor. Id. at 811. Thus, it ruled that the assault conviction merged into the robbery conviction. Id. at 814.

As in Kier, it is unclear in this case whether the jury found that robbery was committed against Venneti, Dickey, or both. But, in Kier there was only one assault conviction. Here, the jury found Chesnokov guilty of assaulting both Venneti and Dickey. To elevate robbery to the first degree, the State only had to establish the conduct constituting assault against Venneti or Dickey. Regardless of whether the jury elevated robbery to the first degree based on the assault of Venneti, Dickey, or both, the fact remains that only one assault conviction was necessary. In other words, there is no resolution of the ambiguity that favors Chesnokov and the rule of lenity does not apply.

We vacate one of Chesnokov's assault convictions and remand for resentencing.

_Appelwick, J._

WE CONCUR:

_Leach, C.J._      _Dwyer, J._