

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72140-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| DEREK JOHN WHITTAKER, | ) | PUBLISHED |
| | ) | |
| Appellant. | ) | FILED: February 1, 2016 |
| | ) | |

Cox, J. — Derek Whittaker appeals his judgment and sentence for one count of domestic violence felony violation of a court order (count 1) and one count of felony stalking (count 2). There is sufficient evidence to support each of the alternative means of his felony stalking conviction. But the jury verdict on felony stalking is ambiguous. This is because it fails to make clear which of several possible violations of a court order elevated the stalking conviction to a felony. Accordingly, the rule of lenity requires that the conviction of the felony violation of a court order must merge into the felony stalking conviction. We affirm the conviction for felony stalking. We remand this case to the trial court with directions to merge the violation of a court order conviction into the felony stalking conviction and to resentence Whittaker.

Sayward Spalding is a hair dresser living in Duvall, Washington. She met Whittaker in April 2012 and they became friends. That friendship evolved into a sexual relationship.

Spalding ended their sexual relationship after a few months. Thereafter, Whittaker repeatedly contacted her by text, phone, e-mail, and in person.

Spalding was not immediately afraid of Whittaker but later became afraid of him. In August 2013, Whittaker arrived at her house late at night intoxicated and yelled and banged on her door. The next month, Whittaker went to Spalding's work, breached the window, and approached her at her car, where he grabbed her arm and stated that he wanted to talk to her. Due to his escalating aggressive behavior, Spalding obtained a court order against him.

Whittaker's behavior changed Spalding's life. She installed a security system in her home, became "reclusive," and "ended almost every relationship" she had because she felt she was putting the people she was with in danger.[1] She also believed it was possible that Whittaker could harm her and was afraid that he would harm her husband.

Whittaker was convicted of violating the order Spalding obtained and was incarcerated during the latter part of 2013.

Also during the latter part of 2013, Spalding opened a new hair salon. She later obtained another court order when she learned of Whittaker's upcoming release in December 2013. Spalding then went into "hiding" by staying

---

[1] Report of Proceedings (May 29, 2014) at 129-30.

2

home or with a friend where Whittaker was unlikely to find her.[2] She also left Duvall for a few days, staying at a hotel and with her father rather than at her home. Upon returning to Duvall, she mostly refrained from going out publicly until January 3, when she returned to work at her salon.

After his release from jail on December 18, 2013, Whittaker called Spalding. He stated that he had seen and liked her new salon. Spalding also received text messages that she believed were from Whittaker.

Spalding and another hairdresser, Heather Jordan, worked at Spalding's new salon. Spalding informed Jordan of the court order obtained near the time of Whittaker's release from jail. Together, they planned what to do if Whittaker appeared at the new salon.

On January 3, 2014, Spalding and Jordan were working at the new salon. Whittaker appeared at the building where the salon is located. Following their plan, Jordan alerted Spalding of Whittaker's presence and called 911 to report his presence, which was contrary to the terms of the court order.

The State charged Whittaker with one count of felony stalking and one count of domestic violence felony violation of a court order. The jury found Whittaker guilty on both counts, as charged. The trial court entered its judgment and sentence on the jury verdict.

Whittaker appeals.

---

[2] Id. at 163.

## SUFFICIENCY OF EVIDENCE

Whittaker argues that there is insufficient evidence to support the felony stalking conviction. We hold that sufficient evidence supports each alternative means of committing this crime.

Due process requires the State to prove beyond a reasonable doubt every element of a crime.[3] An insufficient evidence claim "admits the truth of the State's evidence and all reasonable inferences from that evidence."[4] The critical inquiry is "'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"[5] "[W]e view the 'evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'"[6]

"Circumstantial evidence and direct evidence can be equally reliable."[7] We defer to the jury on questions regarding conflicting evidence, witness credibility, and the persuasiveness of evidence.[8]

---

[3] State v. Rodriquez, 187 Wn. App. 922, 930, 352 P.3d 200, review denied, 184 Wn.2d 1011 (2015).

[4] Id.

[5] Id. (quoting Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

[6] State v. Garcia, 179 Wn.2d 828, 836, 318 P.3d 266 (2014) (quoting State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009)).

[7] Rodriquez, 187 Wn. App. at 930.

[8] Id.

In Washington, criminal defendants have the constitutional "right to a unanimous jury verdict."[9] "This right may also include the right to a unanimous jury determination as to the means by which the defendant committed the crime when the defendant is charged with (and the jury is instructed on) an alternative means crime."[10] "[E]xpress jury unanimity as to [the] means is not required" when sufficient evidence supports each alternative means of committing the crime.[11] But "a particularized expression of jury unanimity is required" if insufficient evidence supports any means.[12]

Under RCW 9A.46.110(1), the charged crime, a person commits stalking if:

(a) He . . . intentionally and repeatedly harasses or repeatedly follows another person; and

(b) The person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or property of the person or of another person. The feeling of fear must be one that a reasonable person in the same situation would experience under all the circumstances; and

(c) The stalker either:

(i) Intends to frighten, intimidate, or harass the person; or

(ii) Knows or reasonably should know that the person is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person.

---

[9] State v. Owens, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014).

[10] Id. (emphasis omitted).

[11] Id.

[12] Id.

This statute "provides alternative means of committing the crime of stalking: [either] intentionally and repeatedly harassing or repeatedly following another person."[13]

Under RCW 9A.46.110(5)(b)(ii), stalking is elevated from a gross misdemeanor to a felony if it violates any order protecting the person being stalked.

Here, the question is whether sufficient evidence supports each alternative means of Whittaker's conviction: intentionally and "repeatedly harass[ing]" or "repeatedly follow[ing]" Spalding. We address, in turn, each of these means.

### Repeatedly Follows

Whittaker first argues there is insufficient evidence that he repeatedly followed Spalding. We disagree.

RCW 9A.46.110(6)(b), defines following as:

> deliberately maintaining visual or physical proximity to a specific person over a period of time. A finding that the alleged stalker repeatedly and deliberately appears at the person's home, school, place of employment, business, or any other location to maintain visual or physical proximity to the person is sufficient to find that the alleged stalker follows the person.

"Repeatedly" is defined as "two or more separate occasions."[14] The statute does not define "separate occasions." But State v. Kintz is instructive.[15]

---

[13] State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).

[14] RCW 9A.46.110(6)(e).

[15] 169 Wn.2d 537, 238 P.3d 470 (2010).

In that case, Clarence Kintz was convicted of stalking two women.[16] Kintz first contacted one woman while he was in a parked van.[17] He then drove past her six times, driving out of her sight after each contact.[18] Kintz similarly drove past the second woman several times.[19]

Kintz argued there was insufficient evidence of the "repeated" element of following or harassment.[20] Specifically, he claimed the evidence did not show that his contacts with the women constituted "separate occasions" for purposes of the statute. The supreme court concluded that a "separate occasion" is "'a distinct, individual, noncontinuous occurrence or incident.'"[21] Thus, "a stalking conviction requires evidence of two or more distinct, individual, noncontinuous occurrences of following or harassment, and *no minimum amount of time must elapse between the occurrences, provided they are somehow separable*."[22]

---

[16] Id. at 540.

[17] Id.

[18] Id. at 555.

[19] Id. at 556-57.

[20] Id. at 544.

[21] Id. at 548 (quoting State v. Kintz, 144 Wn. App. 515, 522, 191 P.3d 62 (2008)).

[22] Id. at 551 (emphasis added).

The court also determined that it is a jury question "whether such instances of following and harassment, divided by such breaks, [are] 'separate' within the meaning of the stalking statute."[23] The court stated:

> it is **repetition, not duration,** that the legislature has made the sine qua non of stalking . . . . This is perfectly sensible because the repetition of contacts alerts the victim (and the trier of fact) to the stalker's criminal intent, i.e., that he is purposefully targeting the victim, as opposed to coming into contact with her by chance.[24]

Based on this analysis, the court held Kintz was properly found guilty of stalking the women because he followed them on two or more separate occasions.[25]

Here, there is sufficient evidence that Whittaker followed Spalding on two or more separate occasions when he appeared at her salon while she was working there on January 3, 2014. It is undisputed that this date was within the charging period. It is also undisputed that the court order protecting Spalding was in effect on that date.

The trial testimony shows that, on that date, three witnesses saw Whittaker in the building where Spalding was working. Jordan testified that she saw Whittaker stop at the salon window and door and briefly look inside. Another witness later saw Whittaker in the building bathroom located at the end of a hallway.

---

[23] Id. at 559.

[24] Id. at 559-60 (second emphasis added).

[25] Id. at 555-56, 557.

Minutes later, Jordan and another witness saw Whittaker stop and look through the salon door again before leaving the building. A jury could reasonably have found that this was the second of two occasions of Whittaker violating the court order on that date. Thus, these two occasions were "distinct" and "noncontinuous occurrences."

On both occasions, separated by minutes, Whittaker was within 500 feet of Spalding. His presence, while Spalding was also in the building, violated the terms of the court order protecting Spalding. Accordingly, the stalking violation was elevated to a felony.

Under Kintz, the two occasions, separated by several minutes, where Whittaker stopped and looked into Spalding's salon window or door, constituted sufficient evidence that he repeatedly followed her. Accordingly, sufficient evidence supports the verdict that Whittaker repeatedly followed Spalding.

### Repeatedly Harasses

Whittaker next argues there is insufficient evidence that he repeatedly harassed Spalding. We disagree.

Under RCW 10.14.020(2):

> "Unlawful harassment" means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose. The course of conduct shall be such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner . . . .[26]

---

[26] RCW 10.14.020(2).

9

"It is the *combination* of separate acts—none of which is necessarily criminal in its own right—that must be 'seriously alarm[ing], annoy[ing], harass[ing], or detrimental' to the victim in order for the perpetrator to have committed the criminal offense of stalking."[27]

In Kintz, the supreme court also determined whether sufficient evidence supported a finding of harassment.[28] Part of that determination was that the women suffered "substantial emotional distress" in accordance with the statute.[29] In that case, one woman was frightened and angry during the encounters, and the other woman was nervous, uncomfortable, frustrated, scared, and even hid.[30]

The court stated "that Kintz's repeated contacts engendered progressively greater fear on the [women] because, with each encounter, it became more apparent that the contacts were not accidental and innocent, but intentional and malevolent."[31] The court also determined that Kintz's course of conduct directed at the women "seriously alarmed" them and were "such as would cause a reasonable person to suffer substantial emotional distress, and actually caused

---

[27] State v. Haines, 151 Wn. App. 428, 435, 213 P.3d 602 (2009) (alterations in original) (quoting RCW 10.14.020(1)).

[28] Kintz, 169 Wn.2d at 552.

[29] Id. at 556-57.

[30] Id. at 541-42.

[31] Id. at 560.

substantial emotional distress."[32] The court also found Kintz's conduct to be "threatening" and "not just abnormal."[33]

Here, there was sufficient evidence for the jury to find that Whittaker's conduct "would cause a reasonable person to suffer substantial emotional distress."[34]

For example, in August 2013, Whittaker arrived at Spalding's house late at night intoxicated and yelled and banged on her door. Whittaker later went to Spalding's work, breached the window, and approached her at her car, where he grabbed her arm and stated that he wanted to talk to her.

There was also substantial evidence for the jury to find that Whittaker engaged in a course of conduct against her that "seriously alarm[ed], annoy[ed], and harass[ed]" Spalding, and actually caused her substantial emotional distress in accordance with the statute.[35]

This evidence includes the fact that Spalding installed a security system in her home, became "reclusive," and "ended almost every relationship" she had because she felt she was putting the people she was with in danger.[36] Additionally, after learning that Whittaker was being released, Spalding went into "hiding," left Duvall for a few days, and mostly refrained from going out publicly

---

[32] Id. at 556-57.

[33] Id. at 560.

[34] RCW 10.14.020(2).

[35] Id.

[36] Report of Proceedings (May 29, 2014) at 129-30.

until she returned to work.[37] Spalding also devised a plan with Jordan at the new salon to call the police if Whittaker appeared. When he did appear, a report to the police by 911 followed.

Thus, sufficient evidence supports finding that Whittaker repeatedly harassed Spalding.

Whittaker properly concedes that the record establishes that he contacted Spalding several times by text messages and at least once by phone prior to January 3 and during the charging period. This satisfies the "repeatedly" element of felony stalking.

Nevertheless, he argues that Spalding was not in fear, as required by the statute, because she did not see him at her salon. He also cites State v. Askham[38] to argue that Spalding did not suffer actual and substantial emotional distress, as required by the statute, because she did not feel threatened, embarrassed, or irritated like the victim in that case. He selectively points to Spalding's testimony where she stated she was "numb" to his text messages and phone calls and "was not shocked" by his appearance at the salon on January 3.[39] This argument is unpersuasive.

Because "we view the 'evidence in the light most favorable to the prosecution,'" we conclude there was sufficient evidence to support the jury determination that Spalding feared that Whittaker intended to injure her and that

---

[37] Id. at 163-65.

[38] 120 Wn. App. 872, 884, 86 P.3d 1224 (2004).

[39] Report of Proceedings (May 29, 2014) at 107-08, 114.

she suffered actual and substantial emotional distress in accordance with the stalking statute.[40] The jury could reasonably infer that Spalding feared that Whittaker intended to injure her during the charging period because she installed a security system in her home, obtained another court order after learning that Whittaker was being released, and went into "hiding."[41] Spalding also left Duvall for a few days, mostly refrained from going out publicly until she returned to work, and devised plan with Jordan to call the police if Whittaker appeared at the new salon. This evidence also supports the jury determination that Whittaker's conduct actually caused Spalding substantial emotional distress.

The credibility of Spalding as to her fear was for the jury to determine, not this court. The jury saw her and heard her testimony and was in the best position to decide whether her testimony was credible.

In sum, sufficient evidence supports each of the alternative means of committing stalking.

## TERM OF NO CONTACT

Whittaker next argues that, if we reverse his felony stalking conviction, the provision in the judgment and sentence that prohibits him from contacting Spalding for 10 years exceeds the statutory maximum for his remaining conviction for violating a court order. Because we affirm that conviction, we decline this request for relief.

---

[40] Garcia, 179 Wn.2d at 836 (quoting Engel, 166 Wn.2d at 576).

[41] Report of Proceedings (May 29, 2014) at 163.

13

A no-contact order may be imposed "for the maximum term of a conviction."[42] Stalking in violation of a protection order is a class B felony with a statutory maximum of 10 years.[43]

Here, the stalking conviction is supported by substantial evidence of both alternative means. Thus, there is no basis to grant the relief Whittaker requests.

## MERGER

For the first time on appeal, Whittaker argues that his felony conviction for violation of a court order merges into his felony stalking conviction. Specifically, he claims that the jury verdict for his stalking conviction is ambiguous because it fails to specify which violation of the court order elevates the conviction to a felony.[44] Thus, he argues, the rule of lenity applies and requires that his conviction of violating the court order merges into the stalking conviction. We must agree.

The merger doctrine is founded on the double jeopardy clauses of the Washington and United States constitutions.[45] This doctrine "accepts that there was sufficient evidence of the elements of the crime but considers further whether the legislature nevertheless intended for one of the offenses to be

---

[42] State v. Navarro, 188 Wn. App. 550, 556, 354 P.3d 22 (2015), review denied, ___ Wn.2d ___ (2016).

[43] RCW 9A.20.021(1)(b).

[44] Brief of Appellant at 17-20. Reply Brief of Appellant at 4-10.

[45] State v. Parmelee, 108 Wn. App. 702, 710, 32 P.3d 1029 (2001).

extinguished because of its redundant consideration within the primary offense."[46]

The doctrine "aids courts in assessing this legislative intent where a defendant's conduct meets the definition of more than one statutory provision."[47] The doctrine

> "only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (e.g., first degree rape) the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping)."[48]

"[W]hen the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime."[49] Thus, "there is no danger of a double jeopardy violation" when "offenses merge and the defendant is punished only once."[50]

This doctrine applies at sentencing "to correct" double jeopardy violations.[51] But there is an exception to the doctrine.[52] "Where two offenses

---

[46] State v. Berg, 181 Wn.2d 857, 872, 337 P.3d 310 (2014).

[47] Id. at 864-65.

[48] Parmelee, 108 Wn. App. at 710-11 (alteration in original) (quoting State v. Vladovic, 99 Wn.2d 413, 420-421, 662 P.2d 853 (1983)).

[49] State v. Freeman, 153 Wn.2d 765, 772-73, 108 P.3d 753 (2005).

[50] Parmelee, 108 Wn. App. at 711.

[51] State v. Chesnokov, 175 Wn. App. 345, 355, 305 P.3d 1103 (2013).

[52] Berg, 181 Wn.2d at 865.

would otherwise merge but have 'independent purposes or effects,' separate punishment may be applied."[53]

When dealing with merger issues, we look at how the offenses were charged and proved, and do not look at the crimes in the abstract.[54] We also "ask[] whether the State was required to prove the act constituting the merging crime to elevate the other crime."[55]

We review de novo merger issues.[56]

Here, the parties implicitly acknowledge that this claim may be raised for the first time on appeal. We agree that it can.[57]

Whittaker's stalking conviction was elevated to a felony because his stalking "violate[d] [a court] order protecting [Spalding]."[58] The State also convicted Whittaker of violating a court order. Thus, the question is whether the jury's verdict tells us on which of several violations it relied on to elevate Whittaker's stalking conviction to a felony. If the jury relied on the same violation it used to convict Whittaker of violation of a court order, then his convictions must merge.

---

[53] Id. at 865-66 (quoting Vladovic, 99 Wn.2d at 421).

[54] State v. Davis, 177 Wn. App. 454, 464, 311 P.3d 1278 (2013).

[55] Id. at 463.

[56] Id. at 460.

[57] State v. Ralph, 175 Wn. App. 814, 823, 308 P.3d 729 (2013).

[58] RCW 9A.46.110(5)(b)(ii).

Our analysis is guided by three cases involving merger. The first is State v. Parmelee.[59] There, this court concluded that two of Parmelee's three convictions for violation of a court order merged into his felony stalking conviction.[60]

In that case, Renee Turner obtained a permanent protection order and two no-contact orders against her ex-husband Allan Parmelee.[61] Parmelee, who was incarcerated, encouraged other inmates to write Turner letters.[62] The State charged him with one count of felony stalking and three counts of violating a court order based on three letters Turner received.[63]

This court stated that each letter to Turner violated a court order and that the stalking charge was based on repeated harassment by these letters.[64] Parmelee argued that the merger doctrine prohibited multiple convictions because violating a protection order was "an essential element of stalking."[65]

This court determined that the stalking statute required "more than one underlying act—repetitive behavior—to constitute stalking."[66] Accordingly, the

---

[59] 108 Wn. App. 702, 32 P.3d 1029 (2001).

[60] Id. at 710.

[61] Id. at 704-05.

[62] Id. at 706.

[63] Id. at 708.

[64] Id. at 709.

[65] Id. at 710.

[66] Id.

State had to prove that at least two of the three protection order violations occurred "to secure convictions for both felony stalking and the protection order violations."[67] Thus, this court concluded that "two of Parmelee's protection order violations [were] essential elements of the crime of felony stalking [and merged] into the stalking conviction."[68]

This court also concluded that Parmelee's "third protection order violation conviction was not an essential element of felony stalking and [stood] as an independent conviction."[69] Accordingly, only two of the convictions for violation of a protection order merged into the stalking conviction. The third conviction did not merge.

The second instructive case is State v. DeRyke.[70] There, Patrick DeRyke pointed a gun at a minor and took her to a wooded area.[71] He was found guilty of first degree attempted rape and first degree kidnapping.[72] DeRyke argued that the trial court erred by failing to merge his kidnapping conviction into his

---

[67] Id. at 711.

[68] Id.

[69] Id.

[70] 110 Wn. App. 815, 41 P.3d 1225 (2002), aff'd, 149 Wn.2d 906, 73 P.3d 1000 (2003).

[71] Id. at 818.

[72] Id.

attempted rape conviction. He argued that the State relied "on the kidnapping offense to elevate the degree of the attempted rape charge."[73]

In that case, the jury was instructed that a person commits first degree rape either by using or threatening to use a deadly weapon *or* kidnapping the victim.[74] This court decided that "[a]lthough the jury unanimously concluded that DeRyke was armed with a deadly weapon *and* . . . kidnapped [the minor], there is no way to tell which basis the jury relied upon in convicting" him of first degree attempted rape.[75] "[N]either the jury instructions nor the verdict form required the jury to specify which act it chose to reach its verdict on the attempted rape charge."[76]

This court stated that the State could have, but did not, submit a proposed instruction excluding kidnapping as a basis for finding DeRyke guilty of first degree attempted rape.[77] This court concluded that the principles of lenity required it "to interpret the ambiguous verdict in favor of DeRyke."[78] Thus, this court "assume[d] the jury based its verdict on DeRyke's kidnapping of [the minor] rather than on his use of a deadly weapon."[79] Accordingly, this court concluded

---

[73] Id. at 823.

[74] Id.

[75] Id. at 824.

[76] Id.

[77] Id.

[78] Id.

[79] Id.

19

that the trial court erred by failing to merge the kidnapping offense into the first degree attempted rape offense.[80]

The supreme court decided the third instructive case: State v. Kier.[81] There, Herbert Kier was convicted of first degree robbery and second degree assault from a carjacking incident.[82] The issue was whether Kier's second degree assault conviction merged into his first degree robbery conviction. His argument was that because the incident involved two victims, and the State identified one victim as the robbery victim and the other victim as the assault victim, an ambiguity existed.[83]

The supreme court determined that "[t]he merger doctrine is triggered when second degree assault with a deadly weapon elevates robbery to the first degree."[84] The State argued that Kier's convictions did not merge because the crimes were committed against separate victims: the robbery victim and the assault victim.[85] Kier argued that it was unclear whether the jury found that the second victim was a victim of the robbery as well as the assault.[86]

---

[80] Id.

[81] 164 Wn.2d 798, 194 P.3d 212 (2008).

[82] Id. at 802.

[83] Id. at 805, 811.

[84] Id. at 806.

[85] Id. at 808.

[86] Id. at 811.

The supreme court determined that there was ambiguity in the jury verdict as to the basis for Kier's conviction. The court reasoned that was so because "the jury heard evidence describing both [victims] as victims of the robbery and the instruction did not specify a victim."[87] Additionally, the jury instructions allowed the jury to consider one victim as both the robbery and assault victim.[88] The court concluded that this ambiguity in the jury's verdict must be resolved in Kier's favor under the lenity rule.[89] Accordingly, the court concluded that Kier's conviction for the assault merged into the conviction for robbery because it was "unclear from the jury's verdict whether the assault was used to elevate the robbery to first degree."[90]

Here, the jury verdict for count 2 stated that Whittaker was "Guilty . . . of the crime of Stalking."[91] In order to elevate this crime to a felony, an essential element was to show a violation of the court order entered to protect Spalding.[92] But the jury verdict fails to identify which of several violations of the court order served to elevate the stalking conviction to a felony.

---

[87] Id. at 812.

[88] Id. at 814.

[89] Id. at 811.

[90] Id. at 813.

[91] Clerk's Papers at 23.

[92] RCW 9A.46.110(5)(b)(ii); Court's Instruction 12, Clerk's Papers at 50.

Specifically, to convict Whittaker of felony stalking, the jury had to find at least two instances of either harassment or following and at least one violation of the court order.[93] To convict Whittaker of violation of the court order, the jury had to find that Whittaker violated the protection order at least once. But the jury verdict is silent on which incidents it chose to reach its verdicts.

For example, the jury could have found that Whittaker repeatedly followed Spalding on January 3 based on the incident we earlier described that occurred at her salon. One of these two "followings" could also have served as the basis for finding him guilty of violation of the court order protecting Spalding.

Of course, this incident at the salon does not exclude the possibility that the jury could also have based its stalking conviction on Whittaker's repeatedly harassing Spalding by text and otherwise prior to January 3 and during the charging period. But this possibility does nothing to clarify what the jury actually did in this case. Thus, this alternative scenario does not cure the problem of the ambiguous verdict. We simply cannot exclude the possibility that the jury convicted on the basis of the first scenario that we described above. The rule of lenity applies. The convictions must merge.

We note that in Kier, the State argued that the ambiguity in the verdict was eliminated "because the prosecutor made a 'clear election' [during closing] of which act supported each charge, as is allowed in a multiple acts case."[94] The supreme court rejected that argument, stating:

---

[93] RCW 9A.46.110(1), (5)(b)(ii).

[94] Kier, 164 Wn.2d at 813.

> The problem with this argument is that we cannot consider the closing statement in isolation. The evidence presented to the jury identified both Hudson and Ellison as victims of the robbery, including Ellison's own testimony that Kier pointed the gun at him in the course of stealing the car. Furthermore, the jury instructions did not specify that Hudson alone was to be considered a victim of the robbery. While the prosecutor at the close of the trial attempted to require this finding, the jury was properly instructed to base its verdict on the evidence . . . .[95]

To the extent the State makes the same or similar argument here, it has not dealt with this discussion by the supreme court. We perceive no reason why this discussion does not also control our disposition in this case.

The State argues that Whittaker's convictions do not merge. It claims there were multiple occasions of improper contact with Spalding during the charging period and that only two were required to support the stalking conviction. The rest were not, in the words of the State, "essential elements" of stalking.

While it is true there were multiple violations of the court order protecting Spalding throughout the charging period, we cannot be certain which served as the basis for the jury to convict Whittaker of felony stalking. The possibility that the jury could have convicted Whittaker on a basis that does not offend the double jeopardy protections to which he is entitled is simply not enough to cure the problem. The verdict is ambiguous. The rule of lenity applies. In this case, the conviction for violation of a court order must merge into the stalking conviction.

---

[95] Id.

23

We affirm the conviction for felony stalking. We remand this case to the trial court with directions to merge the violation of a court order conviction into the felony stalking conviction and to resentence Whittaker.

_Cox, J._

WE CONCUR:

_Trickey, J_                    _Dwyer, J._