94 P.3d 952 (2004)
In the Matter of the Personal Restraint Petition Of Stephen J. LORD, Petitioner.
No. 73853-0.
Supreme Court of Washington, En Banc.
Argued March 23, 2004.
Decided July 29, 2004.
*953 David Zuckerman, Seattle, for Petitioner.
Gerald Horne, Pierce County Prosecutor, Kathleen Proctor, Deputy, Alicia Marie Burton, Deputy, Tacoma, for Respondent.
BRIDGE, J.
Stephen J. Lord petitioned for review of an order of the chief judge of Division Two of the Court of Appeals dismissing his timely personal restraint petition (PRP). He principally asserts that the prosecutor breached the plea agreement when she failed to recommend that he receive a partially suspended sentence conditioned on a Special Sex Offender Sentencing Alternative (SSOSA). We granted review and now hold that the prosecutor breached the plea agreement by refusing to recommend to the sentencing court that Lord receive a partially suspended sentence conditioned on a SSOSA.

STATEMENT OF FACTS
On February 2, 2001, the State charged Lord with two counts of sexual exploitation of a minor and four counts of first degree child molestation for acts he committed against his then four- and six-year-old granddaughters. In exchange for Lord's guilty plea, the prosecutor agreed to amend Lord's original information and charge him with three counts of first degree child molestation in order to make him eligible for a SSOSA. The prosecutor also appears to have agreed that Lord receive 132 months in custody with 126 months suspended on the condition that Lord receives a SSOSA.[1]
On May 31, 2001, the trial court considered whether to accept Lord's guilty plea. Prior to accepting his plea, the court engaged in the following colloquy:
THE Court: Right now the guilty plea form indicates that the prosecutor would be making a recommendation to me at sentencing if you were eligible for a SSOSA, or a Special Sex Offender Sentencing Alternative, if you are eligible for such an alternative. It doesn't mean the Court will adopt that, and I want to make certain that you understand they are just recommendations. Despite the evaluation, whether you are eligible or not, the Court may determine that you were not suitable for a SSOSA sentencing. Do you understand that?
THE Defendant: Yes.
State's Resp. to PRP, App. F at 6. The trial court then accepted Lord's guilty plea and scheduled his sentencing on July 26, 2001, so that the State could conduct a presentence investigation (PSI) and Lord could obtain a SSOSA evaluation.
On July 26, 2001, the court continued Lord's sentencing until September 28, 2001, to permit Lord an additional SSOSA evaluation since Dr. Mark Bennett Whitehill, who *954 performed Lord's first SSOSA evaluation, had found that Lord was not amenable to treatment. But Lord's second evaluator, Dr. Michael Comte, affirmed Dr. Whitehill's conclusion. Lord then independently sought a third SSOSA evaluation from another evaluator, Mr. Lang Taylor, without informing the trial court or the prosecutor. Mr. Taylor found that Lord was amenable to treatment.
At Lord's September 28, 2001 sentencing hearing, the prosecutor revoked her recommendation that Lord receive a SSOSA. The prosecutor also presented Lord's first SSOSA evaluator, Dr. Whitehill, who testified that, in his opinion, Lord was not amenable for a SSOSA because of various personal, occupational, and psychological reasons.
Lord protested the prosecutor's revocation of her recommendation. First, he contended that the court and the prosecutor should disregard the findings of the first two evaluators because the third evaluator he hired found that he was amenable to a SSOSA. He also stated:
Part of the reason that I came in and made the plea versus going to court was that the prosecutor ... had stood on the side of recommending a SSOSA, and it appears today that she has reversed her opinion on that. She did it two times, once in writing on the offer for the agreement, and the second time on the plea on two separate dates. That is what entered into my decision to come in and do the plea, because the prosecutor was going to endorse it, and here today what I am hearing is that she opposes it, and she is being allowed to reverse her position as far as, you know, recommending prison and not recommending treatment for me.
Id., App. H at 35. The prosecutor responded:
Your honor, the agreement between the parties was that the State would recommend SSOSA if the Defendant was found amenable. When we were here in court on the 26th of July it was indicated to the Court and to the State that the Defendant had an evaluation with Dr. Whitehill and that he was found not amenable to treatment.
Id., App. H at 36. The court rejected Lord's argument stating, "I told you that when I took your plea back in May, which means that even if you are amenable for treatment, the Court is not bound by an agreement reached between your attorney and the state's attorney...." Id. at 33. The court then found that confinement was appropriate and refused to grant a SSOSA.[2]
Lord did not directly appeal his judgment and sentence. Rather, he filed this timely PRP on August 8, 2002 at Division Two of the Court of Appeals principally arguing that the prosecutor improperly revoked her agreement to recommend that Lord receive a partially suspended sentence and a SSOSA.[3] The chief judge of the Court of Appeals dismissed Lord's PRP holding that the prosecutor did not breach the plea agreement by revoking her recommendation.[4] Ct. of Appeals Order at 11. Lord filed a motion for discretionary review of the chief judge's decision *955 in this court again asserting that the prosecutor breached the plea agreement. [5] WE GRANTED REVIEW.

ANALYSIS
In order to obtain relief in a timely PRP, Lord must establish (1) that he was actually and substantially prejudiced by a violation of his constitutional rights; or (2) "that the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice." In re Pers. Restraint of Cook, 114 Wash.2d 802, 812, 792 P.2d 506 (1990). See also In re Pers. Restraint of Davis, 142 Wash.2d 165, 170-71, 12 P.3d 603 (2000). He may not rely on "[b]ald assertions and conclusory allegations." In re Pers. Restraint of Rice, 118 Wash.2d 876, 886, 828 P.2d 1086, cert. denied, 506 U.S. 958, 113 S.Ct. 421, 121 L.Ed.2d 344 (1992). Rather, for Lord to prevail on a PRP alleging constitutional error, he must show by a preponderance of the evidence that the error has caused him actual prejudice. Cook, 114 Wash.2d at 813-14, 792 P.2d 506; In re Pers. Restraint of Powell, 117 Wash.2d 175, 184, 814 P.2d 635 (1991).

Breach of the Plea Agreement
Lord asserts the prosecutor breached the plea agreement when she revoked her recommendation that Lord receive a partially suspended sentence on the condition that he receives a SSOSA. A plea agreement is a contract between the defendant and the prosecutor. State v. Turley, 149 Wash.2d 395, 400, 69 P.3d 338 (2003). A prosecutor must act in good faith when carrying out the terms of the plea agreement. State v. Sledge, 133 Wash.2d 828, 839, 947 P.2d 1199 (1997); State v. Marler, 32 Wash.App. 503, 508, 648 P.2d 903, review denied, 98 Wash.2d 1007 (1982). However, plea agreements are more than simple contracts. Sledge, 133 Wash.2d at 839, 947 P.2d 1199. Since plea agreements concern fundamental rights of the accused, constitutional due process rights apply. Id."Due process requires a prosecutor to adhere to the terms of the agreement" and recommend the agreed upon sentence. Id. (citing Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)); State v. Talley, 134 Wash.2d 176, 183, 949 P.2d 358 (1998). A defendant may seek relief from a prosecutor's failure to adhere to the terms of the plea agreement in a timely PRP. See In re Pers. Restraint of James, 96 Wash.2d 847, 849-50, 640 P.2d 18 (1982); In re Pers. Restraint of Palodichuk, 22 Wash.App. 107, 111, 589 P.2d 269 (1978). If a personal restraint petitioner can show that the prosecutor has failed to adhere to the terms of the plea agreement, the petitioner establishes that he or she was actually and substantially prejudiced by the prosecutor's violation of his or her constitutional rights and is entitled to relief.[6]See James, 96 Wash.2d at 850, 640 P.2d 18; Palodichuk, 22 Wash.App. at 111, 589 P.2d 269.
To determine whether a prosecutor has adhered to the terms of an agreement, *956 we review the sentencing record to ascertain the parties'"objective manifestations of intent." Turley, 149 Wash.2d at 400, 69 P.3d 338 (citing Wilson Court Ltd. P'Ship v. Tony Maroni's, Inc., 134 Wash.2d 692, 699, 952 P.2d 590 (1998)). A defendant has two possible remedies if the prosecutor has breached the agreement. State v. Miller, 110 Wash.2d 528, 531, 756 P.2d 122 (1988). "`The court can permit the accused to withdraw his plea and be tried anew on the original charges, or grant specific performance of the agreement.'" Id. (quoting State v. Tourtellotte, 88 Wash.2d 579, 585, 564 P.2d 799 (1977)); see also State v. Harrison, 148 Wash.2d 550, 557, 61 P.3d 1104 (2003). A defendant's preference of remedy controls, "`unless there are compelling reasons not to allow that remedy.'" Harrison, 148 Wash.2d at 557, 61 P.3d 1104 (quoting Miller, 110 Wash.2d at 535, 756 P.2d 122).
The chief judge examined Lord's plea agreement to ascertain the parties' intent, noting that "although the plea agreement is not the picture of clarity, it appears that the prosecutor agreed to recommend a sentence of 132 months with 126 months suspended on the condition petitioner successfully obtained treatment under SSOSA." Ct. of Appeals Order at 10. Accordingly, the chief judge held that "because the [sentencing] court found petitioner ineligible for a SSOSA, the prosecutor was no longer obligated to recommend" that Lord receive a partially suspended sentence, and thus, the prosecutor adhered to the terms of the agreement. Id. at 11. Notably, she acknowledged that "[i]f the prosecutor had agreed to recommend a SSOSA on the condition petitioner provide evidence he was amenable to treatment, petitioner's argument that the prosecutor breached the plea agreement would be more persuasive." Id. at 11 n. 8.
Lord, however, contends that "[t]he Chief Judge's interpretation puts the cart before the horse. A defendant cannot `obtain a SSOSA' until the judge chooses that option. But the judge does not make her decision until she hears the prosecutor's recommendation." Pet'r's Suppl. Br. at 10. Lord posits that "[n]o defendant would agree to such a one-sided bargain." Id. Instead, he contends that the prosecutor's recommendation depended on his eligibility for a SSOSA. We agree.
The portion of the plea agreement pertaining to the prosecutor's recommendation supports Lord's claim. The plea agreement does not demand that Lord actually obtain a SSOSA from the sentencing court before the prosecutor recommends that he receive a partially suspended sentence and a SSOSA. Rather, it provides that the prosecutor will recommend to the court that Lord receive a partially suspended sentence on the "condition" of his " successfully [sic] treatment per SSOSA."[7] State's Resp. to PRP, App. C at 4. Nothing in this portion of the plea agreement supports the chief judge's conclusion that the plea agreement establishes that Lord must first obtain a SSOSA from the sentencing court before it makes its sentencing recommendation.
Statements of the parties' intent also support Lord's assertion that the prosecutor's recommendation depended solely on his eligibility for a SSOSA. First, both the State and Lord agree that the prosecutor amended Lord's original information from two counts of sexual exploitation of a minor and four counts of first degree child molestation to three counts of first degree child molestation in order to make him eligible for a SSOSA.[8] *957 See State's Resp. to PRP, App. E. At his plea hearing, the court advised Lord that "[r]ight now the guilty plea form indicates that the prosecutor would be making a recommendation to me at sentencing if you were eligible for a SSOSA," to which Lord indicated his agreement. State's Resp. to PRP, App. F at 6 (emphasis added). Moreover, at sentencing, the prosecutor also stated "the agreement between the parties was that the State would recommend SSOSA if the Defendant was found amenable."[9] State's Resp. to PRP, App. H at 36 (emphasis added). Similarly, at sentencing, Lord argued that the prosecutor was required to recommend that he receive a SSOSA since his third evaluator found him amenable. State's Resp. to PRP, App. H at 36. Thus, based on these statements, we conclude that both the prosecutor and Lord clearly understood that the prosecutor's recommendation for a partially suspended sentence depended on his eligibility for a SSOSA.
Even so, the State argues we should refuse to hold that the prosecutor breached the agreement since two evaluators found that Lord was not amenable to treatment and, therefore, ineligible for a SSOSA. See State v. Young, 125 Wash.2d 688, 695, 888 P.2d 142 (1995) (holding that an offender must be found amenable for a SSOSA before he or she can be deemed eligible). The plea agreement, however, fails to specify the number of unfavorable evaluations Lord could receive before the prosecutor could revoke her recommendation.[10] The SSOSA statute, RCW 9.94A.670, is also silent about the effect of evaluations obtained by a defendant independent of a motion or a court order, the total number of evaluations an offender may receive, or the number of favorable versus unfavorable evaluations necessary for a defendant to be deemed amenable to treatment.[11] Thus, nothing in the plea agreement itself or the SSOSA statute conditions the prosecutor's recommendation of a SSOSA on whether the State's evaluator found Lord to be amenable.
Because the prosecutor breached the plea agreement by failing to recommend that Lord receive a partially suspended sentence conditioned on a SSOSA, we reverse the chief judge's ruling dismissing Lord's PRP, grant his petition, and remand his case to the trial court. There Lord may either withdraw his plea or demand specific performance absent "a showing that compelling reasons exist not to allow [his] choice."[12]Turley, 149 Wash.2d at 401, 69 P.3d 338 (citing Miller, 110 Wash.2d at 535, 756 P.2d 122). If Lord demands specific performance, the State "must present the agreed-upon sentencing recommendation without equivocation" unless the State can show compelling reasons exist not to allow his choice.[13]State v. Van *958 Buren, 101 Wash.App. 206, 218, 2 P.3d 991 (citing Powell, 117 Wash.2d at 199, 814 P.2d 635), review denied, 142 Wash.2d 1015, 16 P.3d 1265 (2000); see also Turley, 149 Wash.2d at 401, 69 P.3d 338.

Double Jeopardy
Lord also argues that his double jeopardy rights were violated when the State charged him twice for the same criminal conduct against his then four-year-old granddaughter. The federal and state constitutions protect defendants from multiple punishments for the same offense. Davis, 142 Wash.2d at 171, 12 P.3d 603; U.S. CONST. amend. V; CONST. art. I, § 9. However, "[t]he double jeopardy clause does not prohibit the imposition of separate punishments for different offenses." State v. Noltie, 116 Wash.2d 831, 848, 809 P.2d 190 (1991) (citing in rE pers. restraint oF fletcher, 113 wash.2d 42, 47, 776 P.2d 114 (1989)). we have stated that:
If one crime is over before another charged crime is committed, and different evidence is used to prove the second crime, then the two crimes are not the "same offense" and a perpetrator may be punished separately for each crime without violating a defendant's double jeopardy rights.
Noltie, 116 Wash.2d at 848, 809 P.2d 190.
The Court of Appeals rejected Lord's double jeopardy claim reasoning that "[t]he State's allegations in the statement of probable cause and petitioner's statement on plea of guilty establish that these acts were independent of one another and that different evidence would support each charge." Ct. of Appeals Order at 19. We agree.
Lord's charges clearly pertain to independent instances of misconduct. In its "Declaration for Determination of Probable Cause," the State sets forth separate instances of Lord's misconduct against his then four-year-old granddaughter. State's Resp. to PRP, App. B. It alleged that between January and December 1999, Lord took nude photographs of his four-year-old granddaughter; Lord fondled his four-year-old granddaughter's vagina while taking nude photographs; and Lord required that both his then four-year-old and six-year-old granddaughters bathe with him and touch him. Because different instances of misconduct support Lord's charges, he cannot now claim that the two child molestation charges in his amended information pertaining to his conduct with his then four-year-old granddaughter violated his double jeopardy rights. See Noltie, 116 Wash.2d at 848, 809 P.2d 190.

CONCLUSION
The prosecutor breached Lord's plea agreement when, after Lord produced an evaluation demonstrating his amenability to SSOSA treatment, she failed to recommend to the sentencing court that Lord receive a partially suspended sentence conditioned on a SSOSA. The State, however, did not violate Lord's double jeopardy rights when it charged him with two counts of child molestation for acts committed against his then four-year-old granddaughter. Accordingly, we reverse the chief judge's ruling dismissing Lord's PRP in part and remand Lord's case to the sentencing court where he has the choice to withdraw his plea or demand specific performance unless the State demonstrates compelling circumstances exist not to allow the chosen option.
ALEXANDER, C.J., JOHNSON, MADSEN, SANDERS, IRELAND, CHAMBERS, OWENS and FAIRHURST, JJ., concur.
NOTES
[1] The handwritten portion of the plea agreement pertaining to the prosecutor's recommendation stated:

132 mos./suspend 126 mos. for 132 mos. on condition (1) community custody, (2) successfully [sic] treatment per SSOSA, (3) follow all conditions set by CCO [community corrections officer], (4) register, (5) $110/$500, (6) no contact w/victim or other minor children, (7) blood draw for DNA [deoxyribonucleic acid] & HIV [human immunodeficiency virus].
State's Resp. to PRP, App. C at 4.
[2] During this hearing, Lord also stipulated that he was convicted in 1991 of second degree theft in Iowa; that his 1991 Iowa conviction was equivalent to a Class C felony in Washington; and that his offender score was properly calculated as seven. Based on the charges in this matter, and Lord's stipulated offender score of seven, the court sentenced Lord to 132 months in custody on each count to run concurrently, 36 months of community custody, registration as a sex offender, and payment of costs.
[3] Lord also argued that the State violated CrR 7.1 by failing to provide him with an adequate opportunity to review his PSI report; his right to effective assistance of counsel was violated when his lawyer failed to adequately advise him of his rights concerning his PSI report and the prosecutor's alleged breach of the plea agreement; and the sentencing court miscalculated his offender score.
[4] The chief judge also held that Lord failed to substantiate his claims that the State violated CrR 7.1; he failed to prove he received ineffective assistance of counsel; he failed to show that the State violated his double jeopardy rights when it charged him twice for acts committed against his then four-year-old granddaughter; he waived his claim that the sentencing court miscalculated his offender score; and the trial court did not violate his right of allocution. Ct. of Appeals Order at 16-20. Lord does not pursue his claims here that the State violated CrR 7.1, that he received ineffective assistance of counsel, and that the trial court violated his right of allocution.
[5] In his motion for discretionary review, Lord also contends that the sentencing court miscalculated his offender score. But, as discussed infra note 12, resolution of this issue depends on the remedy Lord elects for the prosecutor's breach of the plea agreement, i.e., withdrawal of his plea or specific performance.

Additionally, Lord claims that his SSOSA evaluators and the community corrections officer conducting his PSI report failed to properly provide him Miranda warnings (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). However, Lord did not raise this particular issue in his PRP that he filed at the Court of Appeals. Thus, we refuse to consider this claim. See State v. Halstien, 122 Wash.2d 109, 130, 857 P.2d 270 (1993) ("An issue not raised or briefed in the Court of Appeals will not be considered by this court.") (citing State v. Laviollette, 118 Wash.2d 670, 679, 826 P.2d 684 (1992)).
[6] We have never specifically addressed the prejudice requirement in instances where a personal restraint petitioner has proved that the prosecutor breached the plea agreement. However, in James, 96 Wash.2d at 849-50, 640 P.2d 18 and Palodichuk, 22 Wash.App. at 111, 589 P.2d 269, this court and the Court of Appeals granted PRPs after the petitioner established that the prosecutor breached the plea agreement reasoning that a prosecutor's failure to adhere to the terms of the agreement violates a defendant's fundamental constitutional due process rights. Thus, these cases implicitly establish that, despite the nonbinding nature of a prosecutor's sentencing recommendation, once a petitioner shows that the prosecutor has breached the plea agreement, that petitioner has demonstrated actual and substantial prejudice from the prosecutor's violation of his or her constitutional due process rights.
[7] Indeed, the additional "conditions" in the handwritten portion of the plea agreement mirror the conditions of the suspended sentence for a SSOSA in RCW 9.94A.670(4)-(5).
[8] RCW 9.94A.670(2) establishes the requirements for a SSOSA. It provides that an offender is eligible for a SSOSA if:

(a) The offender has been convicted of a sex offense other than a violation of RCW 9A.44.050 or a sex offense that is also a serious violent offense;
(b) The offender has no prior convictions for a sex offense as defined in RCW 9.94A.030 or any other felony sex offenses in this or any other state; and
(c) The offender's standard sentence range for the offense includes the possibility of confinement for less than eleven years.
We have also established that RCW 9.94A.670 requires that an offender must be found amenable for a treatment by a SSOSA evaluator before he or she is deemed eligible for a SSOSA. State v. Young, 125 Wash.2d 688, 695, 888 P.2d 142 (1995). Here, the State appears to have amended Lord's charges so that Lord's standard range sentence "includes the possibility of confinement for less than eleven years." RCW 9.94A.670(2)(c).
[9] As noted, we have interpreted RCW 9.94A.670 to require that an offender must be found amenable for a SSOSA before he or she is eligible for a SSOSA. Young, 125 Wash.2d at 695, 888 P.2d 142.
[10] The State could have easily clarified in Lord's plea agreement that its SSOSA recommendation depended on whether its evaluator found that Lord was amenable for a SSOSA.
[11] RCW 9.94A.670(3) provides a mechanism where the trial court has the discretion to order as many as two examinations to ascertain an offender's amenability to treatment. However, it does not expressly prohibit an offender from hiring an evaluator at his or her own expense or provide any guidance about the weight of such evaluations.
[12] As noted, supra note 5, Lord also claims that the sentencing court miscalculated his offender score by including a 1991 Iowa conviction that has "washed out." If Lord elects to withdraw his plea, Lord's stipulation to his criminal history and offender score will also necessarily be withdrawn since the parties return to their respective positions prior to Lord's guilty plea. However, if Lord elects specific performance, the trial court must resolve Lord's claim that the original sentencing court miscalculated his offender score and that he is entitled to resentencing with a different offender score. See In re Pers. Restraint of Goodwin, 146 Wash.2d 861, 874, 50 P.3d 618 (2002).
[13] The sentencing court is still entitled to reject the State's recommendation. See In re Pers. Restraint of Breedlove, 138 Wash.2d 298, 309, 979 P.2d 417 (1999); Van Buren, 101 Wash.App. at 218, 2 P.3d 991. Further, the court is also entitled to hear testimony from Dr. Whitehill and Dr. Comte as well as Mr. Taylor in regard to Lord's amenability to treatment. See State v. Sanchez, 146 Wash.2d 339, 349-50, 46 P.3d 774 (2002) (holding that community corrections officers who are appointed by the court to make sentencing recommendations are not parties to the prosecutor's agreement with the defendant, and may advocate for a position opposite from that of the prosecutor). However, when eliciting testimony from these witnesses, "the State may not act so as to undermine a plea agreement to which it is a party." Sledge, 133 Wash.2d at 843 n. 7, 947 P.2d 1199.