# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In re the Personal Restraint Petition of:<br><br>AMANDA CHRISTINE KNIGHT,<br><br>                      Petitioner. | No.  49337-3-II<br><br><br>UNPUBLISHED OPINION |

MELNICK, P.J. — Amanda Christine Knight seeks relief from personal restraint. A jury convicted her of felony murder in the first degree, two counts of robbery in the first degree, two counts of assault in the second degree, and burglary in the first degree. Knight appealed and we affirmed her convictions.[1]

In this personal restraint petition (PRP), Knight claims that one of her robbery convictions merges with her felony murder conviction because they involve the same victim, James Sanders. She also argues that because of a change in law since her appeal, her other robbery conviction merges with one of the assault convictions because they involve the same victim, Charlene Sanders[2]. We conclude that the felony murder conviction merges with the robbery conviction.[3]

---

[1] *State v. Knight*, 176 Wn. App. 936, 963, 309 P.3d 776 (2013).

[2] James Sanders and Charlene Sanders were married and have the same last name. For purposes of clarity we refer to them by their first names in this opinion. I intend no disrespect.

[3] Knight also argues that if we conclude the felony murder and robbery do not merge that insufficient evidence exists to support the charges. Based on our disposition of this issue, we need not decide this issue. Similarly, we need not address Knight's ineffective assistance of counsel claim.

We grant the PRP in part, deny it in part, and remand to the trial court for resentencing consistent with this opinion.

FACTS[4]

In April 2010, Knight, Kyoshi Higashi, Joshua Reese, and Clabon Berniard all participated in a home invasion robbery in Lake Stevens. Not long afterwards, Higashi contacted Knight and told her that he wanted to commit another robbery.

After finding a Craigslist advertisement for a wedding ring James had posted, Knight called him from a nontraceable disposable phone and asked if she and her boyfriend could see the ring. Wanting to arrive after dark, Knight arranged to meet James at the Sanders' house that evening.

Knight drove Higashi, Berniard, and Reese to the Sanders' house and parked so they could make a quick getaway. Higashi possessed Knight's firearm; Reese and Berniard also possessed firearms. They had zip ties and masks with them. Reese and Berniard remained in the car. Knight put on a pair of gloves. Higashi handed her several zip ties.

Knight and Higashi met James outside the house and then walked into the Sanders' kitchen. Once inside, James handed an old wedding ring to Knight and Higashi. James then called upstairs to his wife to come downstairs and help him answer Knight's and Higashi's questions about the ring. The Sanders' two sons remained upstairs.

Knight told James that she was interested in buying the ring. Higashi revealed a large amount of cash, but also displayed a gun and threatened James and Charlene. The Sanders told Higashi and Knight to take whatever they wanted and leave.

Knight zip-tied Charlene's hands behind her back and Higachi did the same to James. Knight then removed Charlene's wedding ring from her finger and either Knight or Higashi

---

[4] Unless otherwise noted, the facts are taken from *Knight*, 176 Wn. App. 936.

removed James's wedding ring from his finger. Knight and Higashi ordered James and Charlene to lie face down on the floor.

Using a Bluetooth device, Knight signaled Reese and Berniard to enter the home. Knight knew that Reese and Berniard possessed loaded guns and that using these guns was part of the group's plan to carry out the Sanders' home invasion robbery.

Once inside the house, Reese and Berniard went upstairs, and at gunpoint, they forced the Sanders' two sons to come downstairs and lie face down near the kitchen entryway. Charlene and one son watched as Knight and Higashi gathered items from the house. Knight also ransacked the main upstairs bedroom as she looked for expensive items to steal.

While Knight was upstairs, Berniard held a gun to Charlene's head, cocked the hammer, began counting down, and asked, "'Where is your safe.'" *State v. Knight*, 176 Wn. App. 936, 963, 309 P.3d 776 (2013) (quoting 5 Report of Proceedings (RP) at 586). When Charlene responded that they did not own a safe, Berniard kicked her in the head and threatened to kill her and her children. Believing she was going to die, Charlene eventually admitted that they had a safe in the garage.

Berniard forced James into the garage. James broke free of his restraints and attacked Berniard. Berniard shot James in the ear, knocking him unconscious. One of the sons then jumped on Berniard who threw him off and hit him with the butt of his firearm.

Reese then dragged James's body through the kitchen and into the adjacent living room, where they were out of sight. Either Reese or Berniard shot James multiple times, causing fatal internal bleeding.

Immediately following the gunshots, the four intruders fled. After they left, Charlene found James on the living room floor and called 911. The police declared James dead at the scene.

The State charged Knight with felony murder in the first degree, two counts of robbery in the first degree, two counts of assault in the second degree, and one count of burglary in the first degree. Each count alleged accomplice liability, aggravating factors, and that one of the participants in the crime was armed with a firearm.

The trial court instructed the jury that to convict Knight of murder in the first degree, the State had to prove beyond a reasonable doubt that "the defendant or an accomplice committed Robbery in the First Degree [and] . . . the defendant or an accomplice caused the death of James . . . in the course of or in furtherance of such crime." PRP, App. A (Instr. 9).

In closing argument, the State argued that the felony murder was based on the robbery of the rings.

> With respect to murder in the first degree, which is Count I in your jury instructions, again, no issue that this occurred on April 28. Charlene testified that her wedding ring was stolen, [James's] wedding ring was stolen. The state has to prove that the defendant or an accomplice caused the death of someone who is not a participant in the crime. Excuse me. Higashi shot and killed James . . . in the course of this robbery.

7 RP at 1007

At sentencing, Knight argued that the convictions for the two second degree assaults and the two robberies should merge, and that the conviction for the assault of James should merge into the felony murder conviction. She also argued that, for sentencing purposes, all of her convictions were based on the same criminal conduct and, therefore, she should only be sentenced on the first degree felony murder conviction. During Knight's sentencing argument, she confirmed that the robbery of James was based on "the taking of the ring at gunpoint." 8 RP at 1076.

In response, the State characterized Knight's argument as a double jeopardy argument asserting that the convictions for the two counts of second degree assault should merge into the convictions for the robberies because the assaults elevated the degree of the robberies to first

4

degree robberies. During this argument, the State again emphasized that the robberies were completed "when the rings were removed from Charlene['s] finger and James['s] finger," so that the robberies could not merge with the later assaults of Charlene and one of the children 8 RP at 1083.

The trial court rejected Knight's arguments and ruled that

[T]he robbery, that is, of the ring, was completed before the assaults and the murder occurred. Therefore, although they occurred in the same place, [the first degree felony murder, the two robberies, and the assault of Charlene, did] not occur at the same time. The robbery of James['s ring] was completed, as well as the robbery of Charlene['s], at the time their rings were stolen. And therefore, the murder and the assaults would not be the same criminal conduct because of that.

In addition, we have a different person involved in the assaults, which is Clabon Berniard, and therefore, it's a completely separate criminal act for that purpose.

8 RP at 1090. Knight appealed her convictions and we affirmed. *Knight*, 176 Wn. App. 936. We decided numerous issues including that sufficient evidence supported the two assault convictions, and that the assault of Charlene did not merge with the robbery of Charlene. A mandate issued on March 7, 2014. Knight filed this PRP on July 14, 2016.

ANALYSIS

Knight argues that her convictions for the first degree robbery of James and the first degree felony murder of James violate double jeopardy because the convictions merge. We agree. She also argues that a change in the law necessitates our reconsidering our prior decision that her convictions for the first degree robbery of Charlene and the second degree assault of Charlene did not merge. We disagree.

I.      PRP STANDARDS

In a PRP, the petitioner has the initial burden. RAP 16.4; *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004). "A personal restraint petitioner must prove either a (1)

5

constitutional error that results in actual and substantial prejudice or (2) nonconstitutional error that 'constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 672, 101 P.3d 1 (2004)). The petitioner must prove the error by a preponderance of the evidence. *Lord*, 152 Wn.2d at 188. In addition, "[t]he petitioner must support the petition with facts or evidence and may not rely solely on conclusory allegations." *Monschke*, 160 Wn. App. at 488; see RAP 16.7(a)(2)(i).

In evaluating PRPs, we can "(1) dismiss the petition if the petitioner fails to make a prima facie showing of constitutional or nonconstitutional error, (2) remand for a full hearing if the petitioner makes a prima facie showing but the merits of the contentions cannot be determined solely from the record, or (3) grant the PRP without further hearing if the petitioner has proven actual prejudice or a miscarriage of justice." *In re Pers. Restraint of Stockwell*, 160 Wn. App. 172, 176-77, 248 P.3d 576 (2011).

A PRP is not a substitute for direct appeal and availability of collateral relief is limited. *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 328-29, 823 P.2d 492 (1992).

In general, there is a one-year time limit for filing PRPs. RCW 10.73.090(1). PRPs filed more than one year after a judgement and sentence becomes final are usually time barred unless an exception applies. RCW 10.73.090, .100. Because Knight filed this PRP more than one year after the mandate in her appeal issued, her PRP is time barred unless she demonstrates that an exception applies.

Exceptions to the time bar are contained in RCW 10.73.100, which provides in relevant part:

The time limit specified in RCW 10.73.090 does not apply to a petition or motion that is based solely on one or more of the following grounds:

. . . .

(3) The conviction was barred by double jeopardy under Amendment V of the United States Constitution or Article I, section 9 of the state Constitution;

(4) The defendant pled not guilty and the evidence introduced at trial was insufficient to support the conviction;

Knight's judgment and sentence became final on March 7, 2014. Knight filed this petition in July 2016, more than one year after the direct appeal was final.

Knight's merger claims implicate double jeopardy and are an exception to the time bar. RCW 10.73.100(3). Knight's sufficiency of the evidence claim also falls within an exception. RCW 10.73.100(4). Because these claims fall under an exception to the one year time bar, we consider them on the merits.

II.  MERGER

Knight argues that her robbery conviction merges with her conviction for felony murder. She also argues that we should reconsider our prior holding that the first degree robbery of Charlene and the second degree assault of Charlene convictions did not merge because *State v. Whittaker*, 192 Wn. App. 395, 367 P.3d 1092 (2016), changed the merger analysis.

The state and federal double jeopardy clauses prohibit the imposition of multiple punishments for the same offense. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004); *see* U.S. CONST. amend V; WASH. CONST. art. I, § 9. Double jeopardy involves questions of law that we review de novo. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005).

*Freeman* provided a three-part examination to be used when reviewing double jeopardy claims. 153 Wn.2d at 771-73. Knight only addresses the third part, which involves the merger doctrine. This doctrine is another aid used to determine legislative intent, even when the two

crimes at issue have different elements. *Freeman*, 153 Wn.2d at 772-73; *see also State v. Kier*, 164 Wn.2d 798, 804, 194 P.3d 212 (2008).

"The merger doctrine, independent of double jeopardy concerns, evaluates whether the legislature intended multiple crimes to merge into a single crime for punishment purposes. The merger doctrine applies only when, in order to prove a more serious crime, the State must prove an act that a statute defines as a separate crime." *State v. Novikoff*, 1 Wn. App. 2d 166, 172-73, 404 P.3d 513 (2017) (internal citation omitted) (assault providing factual basis for fourth degree assault was also element of no contact order violation). "Whether the merger doctrine bars double punishment is a question of law that we review de novo." *State v. Williams*, 131 Wn. App. 488, 498, 128 P.3d 98 (2006), *adhered to on remand*, 147 Wn. App. 479, 195 P.3d 578 (2008).

"The merger doctrine applies when the legislature clearly indicates that it did not intend to impose multiple punishments for a single act that violates several statutory provisions." *State v. Muhammad*, 4 Wn. App. 2d 31, 63-64, 419 P.3d 419, *review granted*, 191 Wn.2d 1019 (2018). "[W]hen the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime." *Freeman*, 153 Wn.2d at 772-73 (legislature intended to punish assault in the first degree and robbery in the first degree separately). An exception to merger exists when a predicate crime results in a separate injury that is not merely incidental to the greater offense, but is distinct from it. *Freeman*, 153 Wn.2d at 778. "Generally a predicate offense will merge into the second crime, and the court may not punish the predicate crime separately." *Muhammad*, 4 Wn. App. 2d at 63.

If each crime has "an independent purpose or effect" they may be punished separately. *Freeman*, 153 Wn.2d at 773. "An exception to the merger doctrine lies when the predicate and

charged crimes do not intertwine." *Muhammad*, 4 Wn. App. 2d at 63. "Courts apply an exception to this merger doctrine on a case-by-case basis; it turns on whether the predicate and charged crimes are sufficiently 'intertwined' for merger to apply." *State v. Saunders*, 120 Wn. App. 800, 821, 86 P.3d 232 (2004).[5]

The two crimes "may be punished separately if the defendant's conduct forming one crime demonstrates an independent purpose or effect from the second crime." *Muhammad*, 4 Wn. App. 2d at 63. "[I]f the predicate crime injures the person or property of the victim or others in a separate and distinct manner from the crime for which it serves as an element, the crimes do not merge." *Muhammad*, 4 Wn. App. 2d at 64.

We look to the statutory elements of each crime to assess "whether the legislature intended to impose a single punishment for a homicide committed in furtherance of or in immediate flight from an armed robbery." *Williams*, 131 Wn. App. at 498. "The offenses merge if the essential elements of the homicide include all the elements of the robbery, such that the facts establishing one necessarily also establish the other." *Williams*, 131 Wn. App. at 498; *cf. In re Pers. Restraint of Schorr*, 191 Wn.2d 315, 325-26, 422 P.3d 451 (2018). Here, the robbery was an element of the felony murder and it was the predicate felony that elevated the crime to murder.

In *Schorr*, the defendant was convicted of both premeditated murder and felony murder. The court concluded that,

> even though first degree felony murder predicated on first degree robbery would merge with the first degree robbery on which it is predicated, that was not the only means of first degree murder to which Schorr pleaded guilty. He also pleaded guilty to the alternative means of premeditated murder. A first degree robbery conviction certainly does not merge with a first degree premeditated murder conviction.

---

[5] *Saunders* relies on the language from *State v. Johnson*, 92 Wn.2d 671, 600 P.2d 1249 (1979), *overruled in part on other grounds by State v. Sweet*, 138 Wn.2d 466, 980 P.2d 1223 (1999). "Although proof of only one such element was necessary, both were intertwined." *Johnson*, 92 Wn.2d at 681.

*Schorr*, 191 Wn.2d at 318.

Here, Knight's sole homicide conviction was felony murder predicated on robbery. Based on *Schorr*'s pronouncement, the felony murder and the robbery merge.

III.   FELONY MURDER

A person is guilty of felony murder in the first degree if, in relevant part, she commits, or attempts to commit, "robbery in the first degree . . . and in the course of or in furtherance of such crime . . . , he or she, or another participant, causes the death of a person other than one of the participants." RCW 9A.32.030(1)(c). The murder must occur in furtherance of the predicate crime. In this case, the State charged only robbery as the predicate crime to the murder.

In a felony murder prosecution, the intent to commit the predicate felony substitutes for the mens rea that is otherwise necessary to establish murder. *State v. Craig*, 82 Wn.2d 777, 781, 514 P.2d 151 (1973); *Muhammad*, 4 Wn. App. 2d at 63. Where the predicate felony is robbery, it is immaterial if the property is taken before or after the killing, if the killing and the robbery are parts of the same transaction. *Craig*, 82 Wn.2d at 781-82; *State v. Coe*, 34 Wn.2d 336, 341, 208 P.2d 863 (1949).

The trial court instructed the jury that to convict Knight of murder in the first degree, the State had to prove beyond a reasonable doubt that "the defendant or an accomplice committed Robbery in the First Degree [and] . . . the defendant or an accomplice caused the death of James . . . in the course of or in furtherance of such crime." PRP, App. A (Instr. 9).

In closing argument, the State argued that the felony murder was based on the robbery of the rings.

> With respect to murder in the first degree, which is Count I in your jury instructions, again, no issue that this occurred on April 28. Charlene testified that her wedding ring was stolen, [James's] wedding ring was stolen. The state has to

10

> prove that the defendant or an accomplice caused the death of someone who is not a participant in the crime. Excuse me. Higashi shot and killed James . . . in the course of this robbery.

7 RP at 1007.[6]

Here, James's death occurred in the course of or in furtherance of the robbery.

IV.    ROBBERY

Washington has adopted a "transactional" analysis of robbery. *State v. Handburgh*, 119 Wn.2d 284, 290, 830 P.2d 641 (1992); *State v. Truong*, 168 Wn. App. 529, 535-36, 277 P.3d 74 (2012). Until the defendant has escaped, the taking is considered to be ongoing. *Truong*, 168 Wn. App. at 535-36; *State v. Manchester*, 57 Wn. App. 765, 770, 790 P.2d 217 (1990). "The definition of 'robbery' thus includes 'violence during flight immediately following the taking.'" *Truong*, 168 Wn. App. at 536 (quoting *Manchester*, 57 Wn. App. at 770). In *Handburgh*, the court noted, "Implicit in the *Manchester* holding is the assumption a taking can be ongoing or continuing so that the later use of force to retain the property taken renders the actions a robbery." *Handburgh*, 119 Wn.2d at 290.

*State v. Roberts*, 142 Wn.2d 471, 512-13, 14 P.3d 713 (2000), and *State v. Cronin*, 142 Wn.2d 568, 579, 14 P.3d 752 (2000), are also instructional. The court emphasized that for a defendant to be guilty as an accomplice, the state must show she possessed general knowledge she aided the commission of the crime, not just any crime. *Roberts*, 142 Wn.2d at 512-13; *Cronin*, 142 Wn.2d at 579. In this case, that crime was robbery.

---

[6] The State's supplemental briefing argues, "There is ample evidence in the record to support the State's theory that the felony murder occurred based on the robbery of the safe and not of the rings, giving an independent purpose to each robbery." Suppl. Br. of Resp't at 3. The State never argued this theory at trial, and the theory is contrary to the jury instructions. In addition, the State could not have argued this theory because there was only an attempted robbery of the safe. The State only charged and alleged a completed robbery, not an attempted robbery.

In the present case, the court instructed the jury that it must find that Knight, acting as a principal or an accomplice, caused the death of another in the course of and in furtherance of robbery in the first degree which, based on the transactional view of robbery was not completed until Knight and her accomplices escaped. Therefore, the robbery was not separate and distinct from the felony murder. They were intertwined.

## V.    FELONY MURDER AND MERGER

The felony murder statute and established precedent demonstrate how the robbery and the killing are intertwined. Knight was convicted of first degree felony murder which "expressly require[s] an associated conviction for another crime." *Williams*, 131 Wn. App. at 499. A person is guilty of murder in the first degree when: "He or she commits or attempts to commit the crime of . . . (1) robbery in the first or second degree . . . *and in the course of or in furtherance of such crime or in immediate flight therefrom,* he or she, or another participant, causes the death of a person other than one of the participants." RCW 9A.32.030(1)(c) (emphasis added). A separate conviction for the predicate crime is, therefore, contrary to the legislative intent and the offenses merge. *Williams*, 131 Wn. App. at 499. The plain language of RCW 9A.32.030 necessarily requires that the killing must be intertwined with, and not separate and distinct from the predicate felony, which in this case is robbery in the first degree.

In *Williams*, the court concluded that the predicate offense of attempted robbery merged with the felony murder conviction. 131 Wn. App. at 497. *Williams* rejected the state's argument that the attempted robbery was factually disconnected from the felony murder or served a different purpose or intent from it. 131 Wn. App. at 498. In so doing, it ruled the robbery was integral to the killing.

> If, as the State suggests, the jury found the attempted robbery was complete when
> Mr. Williams took some undefined substantial step earlier in the evening, then it

> could not have found that the shooting was in furtherance of or in flight from that attempt. And the first degree murder conviction could not stand. Likewise, the State's assertion that the two crimes were completely unrelated is inconsistent with the felony murder charge.

*Williams*, 131 Wn. App. at 499.

Similarly here, if, as the State suggests and as the dissent concludes, the robbery was completed after Knight or her accomplices took James's ring, then the jury could not have found that the shooting occurred in furtherance of that robbery, and the murder in the first degree conviction could not stand. It would not be in the course of or in furtherance of the robbery. Furthermore, the State's assertion that the killing and robbery have unrelated purposes is inconsistent with the felony murder charge and its theory of the case at trial.

In addition, the facts of this case demonstrate that the robbery and killing were intertwined. Knight and her accomplices committed a home invasion robbery in Lake Stevens. One accomplice contacted Knight and said he wanted to commit another robbery. They targeted James and his family, arrived at his house, zip-tied Charlene and James and forced them to lie face down on the floor. One of Knight's accomplices held a gun to the back of Charlene's head, and repeatedly yelled at Charlene and James, demanding to know where their safe was located. Ultimately, Charlene told Knight's accomplices that there was a safe. James was led to the garage to open the safe. James told the intruders a code for the safe, and then broke free of the zip ties and began fighting with Knight's accomplice. At that time, the defendant's accomplice shot and killed James.

In short, the record demonstrates that during the commission of the home-invasion robbery, James fought with Knight's accomplices in an effort to stop the robbery, and Knight's accomplice shot James. Knight's accomplices' use of force was intertwined with, and not separate and distinct from, the ongoing robbery. *See Freeman*, 153 Wn.2d at 779 (noting that force used to intimidate a victim into providing property "is often incidental" to robbery); *see also Truong*, 168 Wn. App.

at 535-36 (holding that under Washington's transactional analysis of robbery, "[t]he taking is ongoing until the assailant has effected an escape"). No independent purpose existed.

Our inquiry is whether the unnecessary use of force had a purpose independent from facilitating the robbery. *See Freeman*, 153 Wn.2d at 778-79. Knight's accomplices restrained James at gunpoint in order to facilitate the ongoing robbery of the Sanders's home. James broke free and attempted to fight back. In that process, Knight's accomplice shot and killed James. There is no evidence that Knight's accomplice shot James with some other motive than to facilitate the home-invasion robbery. Unlike *Schorr*, here the State did not charge both premeditated murder and felony murder. Because the felony murder and the robbery of James were intertwined and because James's death occurred in the course of or in furtherance of the robbery, the charges merge.

VI.   ROBBERY AND ASSAULT OF CHARLENE

Knight argues that *Whittaker* has changed the analysis for the merger doctrine as articulated in *Freeman*. Knight also argues that in the interests of justice under RAP 16.4(d), we should reconsider the holding on direct appeal that the convictions for the robbery of Charlene and the two assault counts did not merge. *Whittaker* does not change the merger doctrine analysis. We decline to reconsider our prior holding on direct appeal.

In *Whittaker*, the defendant was convicted of one count of felony stalking and one count of felony violation of a protection order. 192 Wn. App. at 400-01. On appeal, the defendant argued that his convictions merged because the stalking verdict failed to specify which violation of the court's protection order elevated the conviction to a felony. *Whittaker*, 192 Wn. App. at 409-10. *Whittaker* applied the well-established rule for merger and recognized the exception to the merger doctrine articulated in *Freeman*. It explained,

14

Specifically, to convict [the defendant] of felony stalking, the jury had to find at least two instances of either harassment or following and at least one violation of the court order. To convict [the defendant] of violation of the court order, the jury had to find that [the defendant] violated the protection order at least once. But the jury verdict is silent on which incidents it chose to reach its verdicts.

For example, the jury could have found that [the defendant] repeatedly followed [the victim] on January 3 based on the incident we earlier described that occurred at her salon. One of these two "followings" could also have served as the basis for finding him guilty of violation of the court order protecting [the victim].

Of course, this incident at the salon does not exclude the possibility that the jury could also have based its stalking conviction on [the defendant's] repeatedly harassing [the victim] by text and otherwise prior to January 3 and during the charging period. But this possibility does nothing to clarify what the jury actually did in this case. Thus, this alternative scenario does not cure the problem of the ambiguous verdict. We simply cannot exclude the possibility that the jury convicted on the basis of the first scenario that we described above. The rule of lenity applies. The convictions must merge.

*Whittaker*, 192 Wn. App. at 415-16 (footnote omitted).

Knight claims that the analysis in *Whittaker* demonstrates that the merger doctrine must be analyzed based on the jury instructions and the jury verdicts alone. Knight also claims that, by following *Whittaker*, we no longer consider the individual facts of the case to determine whether specific counts should merge. As has been previously pointed out, we disagree with Knight.

As to Knight's claim that we should reconsider our prior holding, a petitioner may not renew a claim that was raised and rejected on the merits on direct appeal unless the petitioner shows that the interest of justice require reconsideration under RAP 16.4(d). *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). In her appeal, we addressed whether the convictions for the assault and the robbery of Charlene merged. *Knight*, 176 Wn. App. at 953. In rejecting Knight's argument, we relied on the well-established principles for merger articulated in *Freeman* and held that the second degree assault was not necessary to elevate the degree of the robbery to first degree. *Knight*, 176 Wn. App. at 953-56. *Whittaker* does not change the law regarding the merger doctrine or its application here. Knight's argument on this issue fails.

15

VII.    SUFFICIENCY OF THE EVIDENCE

Knight next argues that if we reject her merger arguments, there was insufficient evidence to support her convictions for felony murder or the assaults because she was not an accomplice to those crimes. A petitioner claiming insufficiency of the evidence admits the truth of the State's evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All inferences from the evidence must be drawn in favor of the State and most strongly against the petitioner. *Salinas*, 119 Wn.2d at 201. Sufficient evidence exists to support a conviction if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006).

We reject Knight's merger arguments related to robbery and assault. Based on *Freeman* and its progeny, and our review of the record in this case, sufficient evidence supports the convictions for the assaults.

We grant the PRP in part, deny in part, and remand to the trial court for resentencing consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
                    Melnick, P.J.

BJORGEN, J.P.T.[*] (concurring in part/dissenting in part) — I agree with the result of the lead opinion and most of its analysis. However, I disagree with the test it uses to apply the independent purpose exception to the merger doctrine.

The law deals with human conduct, in all its depth and subtleties. Lacking, fortunately, a precise, quantifiable tool to draw distinctions in the murky shades of that conduct, we use language as best we can. Words, though, are like the jaws of a vice that don't quite meet: good at grasping the easily defined, less so with the finer weave. For example, as figures of rhetoric, the metaphoric can sometimes evoke the folds of conduct and experience more surely and vividly than cold exposition. In illuminating distinctions or prescribing rules, though, the recourse to metaphor often only confuses, through its inherent vagueness or temptation to multiply categories. In its use of the notion of intertwining as the standard for applying the independent purpose exemption, the lead opinion does this.

In *State v. Freeman*, 153 Wn.2d 765, 778-79, 108 P.3d 753 (2005), our state Supreme Court described the exception to merger here at issue in the following terms:

> Finally, we turn to a well established exception that may operate to allow two convictions even when they formally appear to be the same crime under other tests. These offenses may in fact be separate when there is a separate injury to "the person or property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an element." [*State v.*]*Frohs*, 83 Wash.App. [803,] 807, 924 P.2d 384 [1996] (citing [*State v.*]*Johnson*, 92 Wash.2d [671,] 680, 600 P.2d 1249[1979)]). . . . The test is whether the unnecessary force had a purpose or effect independent of the crime.

In this test, the key notions of independent purpose or effect and "not merely incidental" are relatively precise and straightforward to apply. Doing so leads me to agree with the lead opinion that the charges of felony murder and robbery of James merged. There is no need to

---

[*] Judge Thomas R. Bjorgen is serving as a judge pro tempore for the Court of Appeals, pursuant to RCW 2.06.150.

clutter the analysis with the vague category of intertwining, even if it has been used in other

Court of Appeals opinions. The Baroque is best confined to music.

Bjorgen, J.P.T.

SUTTON, J. (dissenting in part) — In her personal restraint petition (PRP), Amanda Knight claims that her conviction for the first degree robbery of James Sanders merges with her felony murder conviction because they involve the same victim, James Sanders, and the robbery of the victims' rings was part of the same continuous course of conduct. The majority agrees with Knight and holds that the first degree robbery conviction merges with the felony murder conviction. Because the robbery of the victims' rings had an independent purpose and effect from the felony murder, I disagree that the robbery of James Sanders merges with the felony murder conviction. Therefore, I respectfully dissent in part on this basis. Knight also argues that the evidence is insufficient to support her convictions for felony murder and assault. I disagree.

Knight also argues that *State v. Whittaker*[7] changed the law of merger since her appeal was filed and therefore, her other first degree robbery conviction merges with one of the first degree assault convictions because they involve the same victim, Charlene Sanders.[8] I agree with the majority that *Whittaker*[9] did not change the law regarding merger. Therefore, I would deny Knight's PRP for the reasons explained below.

Knight argues that in order to avoid a double jeopardy issue, the first degree felony murder and the first degree robbery of James convictions must merge. I disagree.

---

[7] *State v. Whittaker*, 192 Wn. App. 395, 367 P.3d 1092 (2016).

[8] James Sanders and Charlene Sanders were married and have the same last name. For purposes of clarity I refer to them by their first names in this opinion. I intend no disrespect.

[9] Knight also argues that (1) if this court concludes that the felony murder and robbery do not merge, the evidence is insufficient to support the charges and (2) her appellate counsel was ineffective. I agree with the majority that we do not need to decide the ineffective assistance claim. But I address the sufficiency claim due to my disposition on merger.

A. LEGAL PRINCIPLES

The federal and state double jeopardy clauses prohibit the imposition of multiple punishments for the same offense. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004); *see* U.S. CONST. amend V; WASH. CONST. art. I, § 9. Double jeopardy involves questions of law that we review de novo. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005). "'The double jeopardy doctrine protects a criminal defendant from being (1) prosecuted a second time for the same offense after acquittal, (2) prosecuted a second time for the same offense after conviction, and (3) punished multiple times for the same offense.'" *State v. Fuller*, 185 Wn.2d 30, 33-34, 367 P.3d 1057 (2016) (quoting *State v. Linton*, 156 Wn.2d 777, 783, 132 P.3d 127 (2006)).

*Freeman* outlined a three-part inquiry to apply to double jeopardy claims. *Freeman*, 153 Wn.2d at 771-73. First, we search for express or implicit legislative intent to punish the crimes separately. *Freeman*, 153 Wn.2d at 771-72. Second, if there is no clear statement of legislative intent, we may apply the "same evidence" or *Blockburger*[10] test, which asks if the crimes are the same in law and in fact. *Freeman*, 153 Wn.2d at 772. And third, we may use the merger doctrine to discern legislative intent where the degree of one offense is elevated by conduct constituting a separate offense.[11] *Freeman*, 153 Wn.2d at 772-73; *see State v. Kier*, 164 Wn.2d 798, 804, 194 P.3d 212 (2008) (stating the inquiry is a "three-part test").

---

[10] *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

[11] Case law suggests that merger may be raised as a stand-alone claim. *See e.g. State v. Novikoff*, 1 Wn. App.2d 166, 172-73, 404 P.3d 513 (2017). But that is not the case here because Knight expressly raises her merger argument in the context of a double jeopardy claim and *Freeman* establishes that merger can be examined as part of a double jeopardy analysis. *Freeman*, 153 Wn.2d at 771-73.

Knight does not address the first two prongs of the *Freeman* inquiry and argues only that the merger doctrine applies here. Accordingly, I address only the applicability of the merger doctrine. *See Kier*, 164 Wn.2d at 805 n.1 (analyzing only the applicability of the merger doctrine where neither party suggested that the analysis under steps (1) and (2) would differ from *Freeman*).

Under the merger doctrine, we presume that "the legislature intended to punish both offenses through a greater sentence for the greater crime." *Freeman*, 153 Wn.2d at 773.

Despite this presumption, *Freeman* recognizes an exception to the merger doctrine that focuses on the individual facts of the case. *Freeman*, 153 Wn.2d at 779. Even if two convictions appear to merge on an abstract level, the convictions may be punished separately if each conviction has an independent purpose or effect. *Freeman*, 153 Wn.2d at 773. In other words, offenses that might otherwise merge may be punished separately "when there is a separate injury to 'the person or property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an element.'" *Freeman*, 153 Wn.2d at 778-79 (quoting *State v. Frohs*, 83 Wn. App. 803, 807, 924 P.2d 384 (1996)). *Freeman* underscored the need for a reviewing court to take a "hard look at each case" based on its facts, the charged crimes, and even the jury instructions in the case. *Freeman*, 153 Wn.2d at 774; *Kier*, 164 Wn.2d at 811-12 (examining the jury instructions when evaluating defendant's merger argument).

B. THE ROBBERY AND FELONY MURDER

Knight argues that the conviction for the first degree robbery of James merges with the conviction for the felony murder of James. Specifically, she argues that because the jury instructions did not specify which first degree robbery charge was the predicate offense for the first degree felony murder charge, the rule of lenity requires us to assume that the predicate offense was the first degree robbery of James and there was "no 'independent purpose' between the

21

robbery and the felony murder." PRP at 11. Even presuming, but not deciding, that the rule of lenity[12] requires that the robbery of the rings is the predicate offense for the felony murder, her argument fails because the robbery of the rings had an independent purpose or effect from the felony murder.[13]

Here, the evidence showed that Kyoshi Higashi pulled out a gun, zip-tied James's hands behind his back, and either Higashi or Knight removed James's ring. *Knight*, 176 Wn. App. 936, 942, 309 P.3d 776. The State argued and proved that the first degree robbery of the rings was completed when Higashi threatened Charlene with a firearm and either he or Knight removed James's and Charlene's rings. *Knight*, 176 Wn. App. at 954. Knight also admitted during closing argument that the purpose of the robbery was to obtain the Sanders' property, the rings, and engage in a home invasion. *Knight*, 176 Wn. App. at 947.

The felony murder to convict instruction did not, however, specify which of the two charged first degree robberies was the predicate offense. To prove the felony murder charge, the State relied on the following facts and evidence: (1) the murder of James happened after the robbery of the rings was complete, (2) once Higashi or Knight took the rings, the charged robbery was complete, (3) the murder of James took place after Clabon Berniard kicked Charlene in the head, pointed a gun at her head, and started to countdown after threatening to kill her if she did not disclose the location and combination of the safe and Berniard forced James to the garage to open

---

[12] Although the rule of lenity generally applies when statutes are ambiguous, it may also apply in the context of merger. *See Kier*, 164 Wn.2d at 811-14 (applying the rule of lenity to appellant's merger argument); *State v. Roberts*, 117 Wn.2d 576, 586, 817 P.2d 855 (1991) (when a statute is ambiguous, "The rule of lenity requires the court to adopt an interpretation most favorable to the criminal defendant.").

[13] To the extent Knight is arguing that *Whittaker* changes the independent purpose or effect test, I disagree. Although the *Whittaker* court addressed merger, it did not discuss the independent purpose or effect test. *Whittaker*, 192 Wn. App. at 409-16.

the safe, and (4) Berniard first shot James when James began to fight him, while they were in the garage and then he and/or Joshua Reese fatally shot James several more times after dragging him into the living room.

The subsequent felony murder of James resulted from the later actions committed by two other co-accomplices, Berniard and Reese, with Knight as an accomplice. The felony murder of James did not occur until after the robbery of the rings was complete and Knight's accomplices were attempting to rob the Sanders' safe.[14] Further, the injury sustained by James during his murder (James's death) was distinct from the injury he sustained during the robbery of the rings (the loss of the rings). Thus, the robbery of the rings was an "injury to . . . 'the person or property of the victim or others, which [wa]s separate and distinct from" the force used in the murder of James. *See Freeman*, 153 Wn.2d at 778-79 (quoting *Frohs*, 83 Wn. App. at 807). Thus, under *Freeman*, I would hold that Knight's convictions for the first degree robbery of James and the felony murder of James do not merge and that Knight's double jeopardy claim on this basis fails. I respectfully dissent from the majority opinion on this basis.

---

[14] By saying that the robbery of the rings was complete, I do not imply that the predicate offense for the felony murder was an uncharged attempted robbery. I am referring to the completed robberies of the rings in relation to the defendants' later acts to demonstrate that the predicate robbery was not sufficiently intertwined with the robbery of the rings to justify merger.

Under the majority's view, the independent purpose and effect test does not apply when the predicate robbery is considered a transactional crime, but that approach would mean that felony murders based on the predicate offense of robbery could never merge. Case law does not support that conclusion. *See e.g. State v. Saunders*, 120 Wn. App. 800, 820-24, 86 P.3d 232 (2004) (holding that defense counsel was not ineffective for failing to argue that the predicate offenses of rape, robbery, and kidnapping merged with the felony murder conviction because the predicate offenses were not sufficiently intertwined with the murder and were separate and distinct for purposes of merger analysis); *see also State v. Peyton*, 29 Wn. App. 701, 720, 630 P.2d 1362 (1981) (refusing to merge predicate robbery with felony murder).

C. SUFFICIENCY OF THE EVIDENCE

Knight also argues that if we reject her merger arguments, there was insufficient evidence to support her convictions for first degree felony murder (Count I) or the second degree assaults of Charlene (Count V) and of JS (count III) because she (Knight) was not an accomplice to those crimes. She further argues that if we hold that the robberies were complete when the rings were taken, there was insufficient evidence that the killing took place in the course of or in furtherance of the robbery. I disagree.

A petitioner claiming insufficiency of the evidence admits the truth of the State's evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All inferences from the evidence must be drawn in favor of the State and most strongly against the petitioner. *Salinas*, 119 Wn.2d at 201. Sufficient evidence exists to support a conviction if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). These standards are the same for appeals and PRPs. *See In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 364, 256 P.3d 277 (2011).

Knight argues that she was only an accomplice to the robberies and that if this court holds that those robberies were completed when the rings were taken from James and Charlene, she could not be an accomplice to the felony murder or the second degree assaults of Charlene and JS. I disagree.

Although the charged robberies were complete when the rings were taken, there was sufficient evidence to allow the jury to conclude that Knight agreed to participate in more than just the robbery of the rings. The fact that Knight continued to search the house for additional items to steal would allow the jury to conclude that Knight had also agreed to participate in a broader robbery, a home invasion, and that the later assaults of Charlene and JS and the later felony murder

24

of James were related to the broader robbery, the home invasion. Because the robberies were not all completed at the time when Charlene and JS were assaulted and when James was murdered, her sufficiency of the evidence claim fails.

In addition, even concluding that the robberies of the rings were the predicate offenses for the felony murder and that those offenses were completed, there was still sufficient evidence to prove that the killing took place during the course of or in furtherance of the robberies because "[a] homicide is deemed committed during the perpetuation of a felony, for the purpose of felony murder, if the homicide is within the 'res gestae' of the felony, *i.e.*, if there was a close proximity in terms of time and distance between the felony and the homicide." *State v. Leech*, 114 Wn.2d 700, 706, 790 P.2d 160 (1990). In *Leech*, the court held that although the crime of arson was complete when the defendant intentionally set a fire, the death of a firefighter that occurred while the fire was still burning was close enough in time and place to the arson to be within the res gestae of that felony. 114 Wn.2d at 708. Here, as in *Leech*, even presuming that the robberies were completed when the rings were taken, James's death still occurred in close proximity in terms of time and distance to the felony. The death occurred shortly after the rings were taken and before Knight and her accomplices left the home where the robbery took place. Thus, I would hold that Knight's sufficiency of the evidence argument fails.

Accordingly, I dissent in part.

SUTTON, J.

25